**STRIS & MAHER LLP**
MATTHEW SELIGMAN (SBN 288980)
 mseligman@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800 | F: (213) 261-0299

**FREE AND FAIR LITIGATION GROUP, INC.**
Carey R. Dunne (*pro hac vice* forthcoming)
 carey@freeandfair.org
Mónica Folch (*pro hac vice* forthcoming)
 monica@freeandfair.org
266 W. 37th St., 20th Floor
New York, NY 10018
Telephone: (646) 434-8604

Attorneys for Amici Curiae

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Jaime Hector Ramirez, <br><br> Defendant. | Case No. Crim. 5:25-cr-00264 <br><br> **BRIEF OF AMICI CURIAE BIPARTISAN CURRENT AND FORMER MEMBERS OF CONGRESS IN SUPPORT OF NEITHER PARTY** <br><br> Hon. John M. Seabright |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .................................................................................................... 1

INTERESTS OF AMICI ........................................................................................... 2

BACKGROUND ...................................................................................................... 4

ARGUMENT ............................................................................................................ 5

  I. The Appointments Clause mandates congressional involvement in certain executive appointments ................................................................................... 5

  II. The appointment of U.S. Attorneys is subject to the Appointments Clause ....... 7

  III. Congress's authority under the Appointments Clause is codified in Sections 541 and 546 of Title 28 ................................................................................... 8

  IV. The Administration's efforts to keep Mr. Essayli in office are inconsistent with the Appointments Clause .................................................................................. 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bowsher v. Synar*,
　478 U. S. 714 (1986) ................................................................................... 1

*Collins v. United States*,
　14 Ct. Cl. 568 (1878) .................................................................................. 7

*Edmond v. United States*,
　520 U.S. 651 (1997) ........................................................................... 1, 6, 7

*Freytag v. Comm'r*,
　501 U.S. 868 (1991) ................................................................................... 1

*Morrison v. Olson*,
　487 U.S. 654 (1988) ................................................................................... 6

*N.L.R.B. v. Enter. Leasing Co. Se., LLC*,
　722 F.3d 609 (4th Cir. 2013) .................................................................. 1, 2

*N.L.R.B. v. New Vista Nursing & Rehab.*,
　719 F.3d 203 (3d Cir. 2013) ............................................................. 6, 7, 10

*N.L.R.B. v. Noel Canning*,
　573 U.S. 513 (2014) ................................................................................... 1

*Ryder v. United States*,
　515 U.S. 177 (1995) ................................................................................... 1

*U.S. v. Garcia*,
　No. 2:25-cr-655 (C.D. Cal.) ........................................................................ 5

*U.S. v. Rojas*,
　No. 2:22-cr-573 (C.D. Cal.) ........................................................................ 5

*United States v. Baker*,
　504 F. Supp. 2d 402 (E.D. Ark. 2007) ....................................................... 7

*United States v. Baldwin*,
　541 F. Supp. 2d 1184 (D.N.M. 2008) ..................................................... 8, 9

*United States v. Gantt*,
   194 F.3d 987 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .............................................. 7

*United States v. Garcia*,
   No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ........................................................................................................ 5

*United States v. Giraud*,
   No. 1:24-CR-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) .................. 8, 10

*United States v. Hilario*,
   218 F.3d 19 (1st Cir. 2000) ("United States Attorneys are inferior officers.") .................................................................................................. 7, 9, 10

*United States v. Sotomayor Vazquez*,
   69 F. Supp. 2d 286 (D.P.R. 1999) ..................................................................... 8, 9

**United States Constitution**

U.S. Const. Article II, § 2, cl. 2 .................................................................*passim*

**Federal Statutes**

5 U.S.C. § 3345 et seq ............................................................................... 8, 10

28 U.S.C. § 509 et seq ......................................................................................... 4

28 U.S.C. § 541 .................................................................................................. 8, 9

28 U.S.C. § 541(a) ................................................................................................. 8

28 U.S.C. § 546 ...........................................................................................*passim*

28 U.S.C. § 546(a) ................................................................................................. 8

28 U.S.C. § 546(b) ................................................................................................. 8

28 U.S.C. § 546(c) ...................................................................................... 2, 4, 8, 10

28 U.S.C. § 546(d) ...................................................................................... 4, 8, 9, 10

**Other Authorities**

The Federalist No. 47 (James Madison) ................................................................. 1

The Federalist No. 76 (Alexander Hamilton) ............................................................... 1

*Former United States Attorneys*, U.S. Dep't of Justice, (April 2, 2025) ................... 4

Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025) ..................... 7

Brittany Mejia et al., *Trump Administration Maneuvers to Keep Essayli as L.A.'s Top Federal Prosecutor, L.A. Times* (July 29, 2025), ......................... 4

# INTRODUCTION

The Constitution's core, government-structuring provisions "reflect the founding generation's deep conviction that 'checks and balances were the foundation of a structure of government that would protect liberty.'" *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, joined by Roberts, C.J., Thomas, J. and Alito, J.) (quoting *Bowsher v. Synar*, 478 U. S. 714, 722 (1986)).[1] The Founders believed that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny." The Federalist No. 47 (James Madison).

In the constitutional scheme of checks and balances, the requirement—found in the Appointments Clause—that the President submit nominations for "principal" and "inferior" officers for the "Advice and Consent of the Senate," U.S. Const. art. II, § 2, cl. 2, plays a crucial role. *See generally Edmond v. United States*, 520 U.S. 651, 658–666 (1997). Since the Founding, the Clause has created a "shared responsibility between the President and the Senate" concerning senior executive branch officials, which acts "as a 'check upon a spirit of favoritism in the President,'" and "prevent[s] the appointment of 'unfit characters.'" *N.L.R.B. v. Enter. Leasing Co. Se., LLC*, 722 F.3d 609, 633 (4th Cir. 2013) (quoting The Federalist No. 76 (Alexander Hamilton)). "The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "it is among the significant structural safeguards of the constitutional scheme," *Edmond*, 520 U.S. at 659. "The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991).

---

[1] All internal quotation marks, alterations, and citations are omitted from case quotations.

Amici respectfully submit that the Administration's effort to retain Bilal Essayli as United States Attorney for the Central District of California without the advice and consent of the Senate violate the letter and the spirit of the Appointments Clause, and the statutes that codify the congressional authority described therein. *See* U.S. Const. art. II, § 2, cl. 2; 28 U.S.C. §§ 541, 546. Indeed, the Administration's machinations to keep Mr. Essayli in office appear designed to circumvent the public hearing and accountability the Clause requires. *See, e.g.*, *Enter. Leasing Co. Se.,* 722 F.3d at 633. Amici take no position as to whether defendants in this or any other criminal matter are entitled to relief, but they respectfully urge the Court not to ratify the Administration's attempt to sidestep the Appointments Clause with respect to Mr. Essayli.

## INTERESTS OF AMICI

Amici curiae are a bipartisan group of current and former members of Congress who, during their tenures, exercised the legislative powers vested in Congress by Article I of the Constitution and their authority under the Appointments Clause to establish the statutory structure for the appointment of certain executive branch officers. Amici participated in the consideration and passage of the Preserving United States Attorney Independence Act of 2007 (the "Act"), codified in 28 U.S.C. § 546, which restored the 120-day limit on interim appointments of United States Attorneys now codified in § 546(c). The Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law.

In enacting the statutory scheme at issue here, Congress acted pursuant to its explicit constitutional prerogative to "by Law vest the Appointment of" inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. These provisions codify the balance struck by the Framers between executive branch flexibility and legislative branch

oversight, ensuring that a critical law enforcement position is filled without undue delay while preserving the Senate's essential role in confirming those who serve beyond a short interim period.

Amici have a strong interest in ensuring that federal courts interpret the statutory framework governing the appointment of United States Attorneys in a manner faithful to this constitutional design and the original intent of amici in passing these critical appointment provisions. The Administration's recent actions to extend Mr. Essayli's tenure as U.S. Attorney beyond the statutory limit, without Senate confirmation, implicates the very separation of powers concerns amici and Congress sought to address in 2007. Amici submit this brief not to advance the position of either party on the merits of the underlying criminal case, but to provide the Court with the legislative and constitutional context in which the relevant statutory scheme was enacted, and to underscore the structural principles at stake in the proper application of these provisions.

The current and former members of Congress in support of this brief are:

- Rep. Lloyd Doggett, Texas's 10th Congressional District, 1995–2005, Texas's 25th Congressional District, 2005–13, Texas's 35th Congressional District, 2013–23, and Texas's 37th Congressional District, 2023–Present.
- Rep. Wayne Gilchrest, Maryland's 1st Congressional District, 1991–2009.
- Rep. Stephen Lynch, Massachusetts's 9th Congressional District, 2001–13, and Massachusetts's 8th Congressional District, 2013 – Present.
- Rep. Frank Pallone, New Jersey's 3rd Congressional District, 1988–93, and New Jersey's 6th Congressional District, 1993–Present.
- Rep. Bennie Thompson, Mississippi's 2nd Congressional District, 1993–Present.
- Rep. Nydia Velázquez, New York's 12th Congressional District, 1993–2013, and New York's 7th Congressional District, 2013–Present.

# BACKGROUND

On January 17, 2025, Martin Estrada, the most-recent Senate-confirmed U.S. Attorney for the Central District of California, resigned his position.[2] Joseph McNally, who was serving as First Assistant U.S. Attorney for the district at the time of Mr. Estrada's resignation, became Acting U.S. Attorney.[3] On March 27, 2025, Attorney General Pamela Bondi appointed Mr. Essayli as U.S. Attorney on an interim basis pursuant to 28 U.S.C. § 546. (Dkt. No. 33-1.) His appointment was effective April 2, 2025. (*Id.*) President Trump did not submit Mr. Essayli as a nominee for Senate confirmation, and his appointment was set to expire by statute 120 days after his appointment, on July 30, 2025. *See* § 546(c)(2). As the expiration date neared, public reports indicated that the judges in the district declined to exercise their authority under § 546(d) to appoint him to the position.[4] When asked in an interview whether his term might end soon, Mr. Essayli told the political host Glenn Beck that "[w]e've got some tricks up our sleeves."[5]

On July 29, 2025—the day before Mr. Essayli's interim appointment was set to expire—the government undertook several steps to keep Mr. Essayli in the position of U.S. Attorney. This included Attorney General Bondi appointing Mr. Essayli as "a Special Attorney" under 28 U.S.C. § 509, 510 and 515 (Dkt. No. 33-3); Attorney General Bondi appointing Mr. Essayli as First Assistant U.S. Attorney "effective upon his resignation as [Interim] United States Attorney" (*id.*); Mr. Essayli resigning his position as Interim U.S. Attorney (Dkt. No. 33-2); and Attorney General Bondi

---

[2] *See Former United States Attorneys*, U.S. Dep't of Justice (updated Apr. 2, 2025), http://justice.gov/usao-cdca/former-united-states-attorneys.

[3] *Id.*

[4] *See* Brittny Mejia et al., *Trump Administration Maneuvers to Keep Essayli as L.A.'s Top Federal Prosecutor*, L.A. Times (July 29, 2025), https://perma.cc/S79U-A895.

[5] *See id.*

ordering that as First Assistant, Mr. Essayli have the authority to serve as Acting U.S. Attorney under the Federal Vacancies Reform Act (Dkt. No. 33-3).

On August 28, 2025, Defendant in the instant case filed a motion to dismiss his indictment and to bar Mr. Essayli and any attorneys working under his supervision from participating in criminal prosecutions in this district on the ground that Mr. Essayli was not lawfully serving as U.S. Attorney. (Dkt. No. 10.) Defendants in two other cases—*U.S. v. Garcia*, No. 2:25-cr-655 (C.D. Cal.), and *U.S. v. Rojas*, No. 2:22-cr-573 (C.D. Cal.)—filed similar motions.[6] On September 30, 2025, a district court judge in Nevada ordered the disqualification of Sigal Chattah, who the Trump Administration attempted to keep in the position of U.S. Attorney for the District of Nevada using the same maneuvers the Administration used with respect to Mr. Essayli. *See United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025).

## ARGUMENT

### I. The Appointments Clause mandates congressional involvement in certain executive appointments

The Appointments Clause provides that:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

---

[6] Amici submit that the perspective they offer in this amicus brief is also relevant to the related proceedings in *Garcia* and *Rojas*.

U.S. Const., art. II, § 2, cl. 2; *see also Edmond*, 520 U.S. 658–59. The Clause contemplates two kinds of officers: "principal" and "inferior" officers. *See Morrison v. Olson*, 487 U.S. 654, 670–71 (1988). Although the line between the two categories "is far from clear," *id*. at 671, the Supreme Court has explained that, in general, "inferior" officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. Factors relevant to this determination include whether the official in question is "subject to removal by a higher Executive Branch official," "empowered . . . to perform only certain, limited duties," and "limited in jurisdiction." *Morrison*, 487 U.S. at 671–72. The Clause makes clear that, for "principal" and "inferior" officers alike, "the *default* manner of appointment" is Presidential nomination followed by Senate confirmation. *Edmond*, 520 U.S. at 660 (emphasis added).

The Framers, with their extraordinary foresight, tempered the advice and consent requirement with a certain amount of flexibility in the appointment of inferior officers. *See id*. The final provision in the Appointments Clause—known as the "Excepting Clause"—authorizes Congress to "vest the Appointment of such inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* The "obvious purpose" of this flexibility "is administrative convenience," which the Framers "deemed to outweigh the benefits of the more cumbersome" advice and consent process that applies without exception to principal officers. *See id.*

The role of the Appointments Clause as the "primary, or general, method of appointment" is confirmed by the scope of the Recess Appointments Clause found in Article II, section 2, clause 3. *N.L.R.B. v. New Vista Nursing & Rehab*., 719 F.3d 203, 228 (3d Cir. 2013). The Appointments Clause "lacks any limitation on when this power is operative—the president *always* has the power to fill vacancies through nomination and the advice and consent of the Senate"—which "stands in contrast to

the power given to the president in the Recess Appointments Clause, which explicitly allows him to fill vacancies unilaterally only during the Recess of the Senate." *Id.* Read together, these clauses "reveal a constitutional preference for divided power over the appointments process, which is deviated from only in specified situations." *Id.*

## II. The appointment of U.S. Attorneys is subject to the Appointments Clause

"United States Attorneys are clearly 'officers' of the United States under the Appointments Clause," *United States v. Baker*, 504 F. Supp. 2d 402, 414 (E.D. Ark. 2007), and to amici's knowledge, every court to have considered the issue has held that U.S. Attorneys are "inferior" officers under the Appointments Clause. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 25–26 (1st Cir. 2000) ("United States Attorneys are inferior officers."); *United States v. Gantt*, 194 F.3d 987, 999–1000 (9th Cir. 1999) (same), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). This is not to suggest that U.S. Attorneys are "inferior" "in the sense of petty or unimportant," *Collins v. United States*, 14 Ct. Cl. 568, 574 (1878), but rather that their "work is directed and supervised at some level by others who are" principal officers, "appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. As the First Circuit noted in *Hilario*, "Congress has ceded to the Attorney General plenary authority over United States Attorneys," and "[t]hey are subject to much closer supervision by superiors than" the officers held to be "inferior" by the Supreme Court in *Edmond*. 218 F.3d at 25.

Accordingly, U.S. Attorneys are subject to the constitution's "default" requirement of Presidential nomination and Senate confirmation. *Edmond*, 520 U.S. at 658–60.[7] Congress has codified its authority under the Appointments Clause in a

---

[7] During President Trump's first term as President, he nominated 85 U.S. Attorneys and all were moved through the Senate Judiciary Committee and confirmed by the Senate. *See* U.S. Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S.*

statutory scheme applicable to the appointment of interim and acting U.S. Attorneys, *see* 5 U.S.C. §§ 3345–3349c; 28 U.S.C. §§ 541, 546, but it has so far declined to exercise its authority under the Appointments Clause to delegate final appointment authority for U.S. Attorneys to the President, the judiciary, or to the Attorney General, *see* U.S. Const., art. II, § 2, cl. 2.

### III. Congress's authority under the Appointments Clause is codified in Sections 541 and 546 of Title 28

Congress has codified its constitutional authority under the Appointments Clause in the United States Code. Section 541(a) of Title 28 confirms the "default" rule under the Clause: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). When vacancies arise, § 546(a) authorizes the Attorney General to appoint an interim U.S. Attorney, but the appointment power is "limited in candidacy and scope," reflecting Congress's intent to ensure that § 546(a) does not enable the executive branch to evade the advice and consent requirement. *See United States v. Baldwin*, 541 F. Supp. 2d 1184, 1191 (D.N.M. 2008); *see also Giraud*, 2025 WL 2416737, at *10 (explaining that the limitations on interim appointments under § 546 prevent the president from being able to "staff the United States Attorney's office with individuals of his personal choice for an entire term without seeking the Senate's advice and consent"). Specifically, the statute prohibits the Attorney General from appointing anyone to whom "the Senate refused to give advice and consent," *see* § 546(b), and the duration of any appointment is limited to 120 days, *see* § 546(c)(2). If 120 days expire and no nominee for the position has obtained the Senate's approval, § 546(d) vests authority to appoint an interim U.S. Attorney in the federal courts, not the executive branch. *See generally United States v. Sotomayor Vazquez*, 69 F. Supp.

---

*Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025), https://www.judiciary.senate.gov/press/dem/releases/durbin-calls-on-trump-white-house-to-honor-blue-slip-rule-for-us-attorneys-during-senate-judiciary-committee-executive-business-meeting.

2d 286, 295 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001) (discussing Appointments Clause and history of U.S. Attorney appointments); *Hilario*, 218 F.3d 26 ("Congress chose to place the appointing power vis-à-vis interim United States Attorneys partially in the judiciary."). Indeed, the practice codified in § 546(d) was the *only* mechanism by which an interim U.S. Attorney could be appointed from 1863 to 1995.

The provisions enacted in § 546 reinforce and codify the allocation of constitutional authority described in the Appointments Clause. The appointment powers under § 546 "are permissive, and the President, with the advice and consent of the Senate, at all times retains the power to essentially veto" the interim U.S. Attorney—whether appointed by the district court or the Attorney General—"and appoint someone of his choosing." *Baldwin*, 541 F. Supp. 2d at 1210. They also "ensure[] that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" and his constitutional power under the Appointments Clause. *Sotomayor Vazquez*, 69 F. Supp. 2d at 295.

**IV. The Administration's efforts to keep Mr. Essayli in office are inconsistent with the Appointments Clause**

The Administration's attempt to retain Mr. Essayli as the U.S. Attorney without presenting his nomination to the Senate for advice and consent, and therefore without the kind of public accountability envisioned by the Founders, is inconsistent with the Appointments Clause. Only Congress has the constitutional authority to establish procedures for the appointment of inferior officers, including U.S. Attorneys, short of advice and consent. Article II expressly provides that Congress "may by Law vest the Appointment of [United States Attorneys], as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. In exercising this constitutional authority, Congress has delegated some of its authority to the Attorney General and the district courts, successively, but it has specifically limited the maximum term a person selected by the Attorney General may

serve on an interim basis to 120 days. *See* 28 U.S.C. § 546; *Hilario*, 218 F.3d at 29 (rejecting constitutional challenge to § 546(d)).[8] Even if, as a district court judge in New Jersey recently concluded, the Federal Vacancies Reform Act ("FVRA") can serve as "an alternative means of temporary appointment" after the 120-day period expires, that is only true where the individual appointed is statutorily eligible to be appointed under the FVRA. *See United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737, at *12–13 (D.N.J. Aug. 21, 2025). That was not the case for Mr. Essayli because he "was not the first assistant when the vacancy occurred [for the U.S. Attorney position]," upon the resignation of Mr. Estrada. *See id.* at 13.

The Administration's maneuvers to keep Mr. Essayli in place beyond the 120-days permitted by statute are an attempt to nullify the limitations that Congress established in the exercise of its authority under the Appointments Clause. To endorse these efforts "would eviscerate the divided-powers framework" that the Appointments Clause requires. *New Vista Nursing & Rehab.*, 719 F.3d at 230. Just as the Recess Appointments Clause must not be construed to "swallow the rule of the Appointments Clause," *id.*, the statutory scheme that codifies Congress's constitutional authority under the Appointments Clause should not be construed to eliminate the Senate's essential role in providing advice and consent concerning Mr. Essayli.

## CONCLUSION

Amici respectfully submit that the Court should resolve the issues presented in this matter consistent with the allocation of constitutional authority under the Appointments Clause.

DATED: October 10, 2025                    Respectfully submitted,

**STRIS & MAHER LLP**

---

[8] The 120-day limit established by § 546(c)—and the absence of any such limit in § 546(d)—is plainly "deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute." *Hilario*, 218 F.3d at 23.

*/s/ Matthew Seligman*
MATTHEW SELIGMAN
mseligman@stris.com
Telephone: (213) 995-6800

**FREE AND FAIR LITIGATION GROUP, INC.**
Carey R. Dunne (*pro hac vice* forthcoming)
carey@freeandfair.org
Mónica Folch (*pro hac vice* forthcoming)
monica@freeandfair.org
266 W. 37th St., 20th Floor
New York, NY 10018
Telephone: (646) 434-8604

Attorneys for Amici Curiae

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Amici Curiae, certifies that this brief contains 3,152 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☒ complies with the word limit set by court order dated September 8, 2025 (Dkt. No. 22).

DATED: October 10, 2025

**STRIS & MAHER LLP**

*/s/Matthew Seligman*
Matthew Seligman
  mseligman@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800