PAMELA J. BONDI
Attorney General
TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
Acting United States Attorney
First Assistant United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Acting Chief, Criminal Appeals Section
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-2400
    E-mail:   alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Nos. 2:25-cr-655-MEMF, 5:25-cr-264-SSS, 2:22-CR-573-FWS |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S SUPPLEMENTAL MEMORANDUM REGARDING REMEDIES |
| ISMAEL GARCIA, JR., JAIME HECTOR RAMIREZ, RONNY ROJAS, | |
| Defendants. | |

    Plaintiff United States of America hereby submits its supplemental memorandum addressing the issue of remedies, as ordered by the Court at the October 14, 2025, hearing on the pending motions to dismiss and disqualify. (*Garcia* Dkt. 21; *Ramirez* Dkt. 10; *Rojas* Dkt. 258.)[1]

//

//

---

[1] The defense motions in these three cases have been transferred to U.S. District Judge J. Michael Seabright of the District of Hawaii. Order of the Chief Judge 25-126, U.S. District Court for the Central District of California (Sept. 8, 2025). (*See Garcia* Dkt. 24; *Ramirez* Dkt. 25; *Rojas* Dkt. 259.)

The government further relies on its previously filed Opposition and attached exhibits (*Garcia* Dkt. 36), the files and records in these cases, and any other evidence that the Court may consider.

Dated: October 16, 2025          Respectfully submitted,

*/s/ Alexander P. Robbins*

ALEXANDER P. ROBBINS
Acting Chief, Criminal Appeals Section
Assistant United States Attorney
Attorney for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants have moved to dismiss their indictments on the ground that Bilal A. Essayli cannot serve as the Acting United States Attorney for the Central District of California under the Federal Vacancies Reform Act, 5 U.S.C. § 3345(a)(1), because (inter alia) he was not the "already-in-place" First Assistant United States Attorney (*Rojas* Mot. 6) when the office of United States Attorney initially became vacant.  Based primarily on this FVRA argument, defendants have also asked this Court to "disqualify Mr. Essayli and his supervisees from participating in criminal prosecutions in this district." (*Garcia* Mot. 62–63; *see also Garcia* Reply 37–38; *Rojas* Reply 7.)

As the government argued in its Opposition, defendants' premise is wrong, and their conclusion does not follow.  (Gov't Opp. 1; *see also id.* at 1–2, 16–19.)  This memorandum addresses the second part of the government's argument—the remedy for any FVRA violation, assuming one occurred.

The remedy must be tied to the violation: *if* Mr. Essayli were no longer serving as the Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1), it would not follow that he must be "disqualified" from participating in the prosecution of these cases, supervising other federal prosecutors, or both.  He would still be the FAUSA.  The FVRA has nothing to do with the Attorney General's power to appoint Special Attorneys or designate supervisors.  (Gov't Opp. 3 & Exh. 3.)  Mr. Essayli is right now wearing three hats: (1) a Special Attorney, (2) the First Assistant U.S. Attorney of this Office, and (3) the Acting U.S. Attorney for the Central District of California.  The first two of Mr. Essayli's hats were given to him by order of the Attorney General, and the third by operation of the FVRA, 5 U.S.C. § 3345(a)(1). Taking away the FVRA role would not disturb the first two.

Should this Court find an FVRA violation, the case law makes clear that such violation is not a ground to dismiss any indictments, with or without prejudice.  *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999); *see also United States v. Garcia*, —F. Supp. 3d—, 2025 WL 2784640, *15–16 (D. Nev. Sept. 30, 2025); *United States v. Giraud*, —F. Supp. 3d—, 2025 WL 2416737, *5–7 (D.N.J. Aug. 21, 2025).  But neither should this Court order that Mr. Essayli—alone among the Department of Justice attorneys in the Central District of California—be prohibited from supervising others or prosecuting cases.  That is a non-sequitur.  The remedy should match the violation, should the Court

find one.  The appropriate remedy would be to disqualify Mr. Essayli from serving as the Acting United States Attorney for the Central District of California under 5 U.S.C. § 3347(a), with no effect on any other position he holds (including First Assistant United States Attorney) or supervisory duties he has been authorized to perform.[2]

## II.     ARGUMENT

### A.     Authority in the Department of Justice Flows from the Attorney General

In 1870, Congress established the Department of Justice with the Attorney General at its head. *See* An Act to establish the Department of Justice, § 1, 16 Stat. 162 (1870).  The Act granted the Attorney General plenary authority over the new Department, authorizing him to "require any solicitor or officers of the Department of Justice to perform any duty required of said Department or any officer thereof."  *Id.* § 14, 16 Stat. at 164.  With exceptions not relevant here, that plenary authority remains today, 28 U.S.C. § 509, and can be generally delegated to subordinates, *id.* § 510.

Because the 1870 Act centralized the federal government's legal work in the Department of Justice, *id.* § 3, 16 Stat. at 162, it also provided for the hiring of "specially retained" attorneys "under the authority of the Department of Justice," § 17, 16 Stat. at 164–165, although it required a certification by the Attorney General that their services were necessary before paying them, *id.*; *see In re Persico*, 522 F.2d 41, 57–58 (2d Cir. 1975).  The restriction was pecuniary: the Act limited only the Attorney General's discretion to *pay* these special attorneys, not to appoint them.  *United States v. Crosthwaite,* 168 U.S. 375, 379–80 (1897) ("full power to employ counsel for the United States"); *United States v. Winston,* 170 U.S. 522, 524–25 (1898) ("the attorney general . . . shall have the control and management, or, if he deems it essential, employ special counsel").  The Attorney General's authority to appoint "specially retained" attorneys or "special counsel" continued into the 20th century.  In 1930, Congress amended the precursor to § 515(b) (then codified at 5 U.S.C. § 315) to allow

---

[2] In their motions (e.g., *Garcia* Mot. 56 n.43), defendants do not squarely invoke § 3348(d) or its "ratification bar."  *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 107 F.4th 1064, 1067 (9th Cir. 2024).  But *that* is the FVRA's statutory remedy, and it is limited to "exclusive" and "nondelegable" functions and duties.  *Id.* at 1074.  Accordingly, although this Court need not address the issue, if the Court chooses to impose any remedy on official actions already taken (after 5:00 p.m. PDT on July 29, 2025, *see* Gov't Opp. Exh. 2), any such retrospective remedy would have to be limited to Mr. Essayli's "performance of any function or duty" of the office of U.S. Attorney within the meaning of § 3348(d).

2

appointment of "special attorneys" as well as "special assistants to the Attorney General." *See* Pub. L. No. 71-133, 46 Stat. 170. Congress stylistically amended the statute in 1948. *See* Pub. L. No. 80-773, § 3, 62 Stat. 869, 985–86. But in all those years, Congress never questioned the Attorney General's authority to appoint attorneys and delegate powers to them.

Today, the Department of Justice employs more than 10,000 attorneys.[3] Thousands of those attorneys are AUSAs appointed under 28 U.S.C. § 542 to serve in one of the U.S. Attorney's Offices around the country, but thousands more work in many other components of the Department—including the Criminal Division, Civil Division, National Security Division, Antitrust Division, Civil Rights Division, Office of the Solicitor General, Office of Legal Policy, and Office of Legal Counsel, among many others. The U.S. Attorney's Offices are but one part of that larger whole.

All of these Department of Justice attorneys exercise the power of the Attorney General. "[I]ndeed, the structure of the Department is largely a creation of orders by the Attorney General." Walter Dellinger, *Creation of an Office of Investigative Agency Policies* 4 (O.L.C. Mem. Oct. 26, 1993). Under the statutes in force today, the Attorney General remains "the head of the Department of Justice." 28 U.S.C. § 503. She is vested with "[a]ll functions" of the other officers, agencies, and employees of DOJ, with narrow exceptions not relevant here. *Id.* § 509. Her subordinate officers include the Deputy Attorney General, *id.* § 504, the Associate Attorney General, *id.* § 504a, the Solicitor General, *id.* § 505, the Assistant Attorneys General, *id.* §§ 506-507A, and U.S. Attorneys who conduct litigation in the 94 judicial districts, *id.* § 541. She has the authority to conduct any legal proceeding that a U.S. Attorney may conduct. *Id.* § 515(a). She has general authority to conduct and supervise all litigation on behalf of the United States. *See id.* §§ 516–519. And she has—as she has for over a century—the authority to appoint various attorneys to carry out the Department's functions, including "special attorneys" and "special assistants to the Attorney General," *id.* § 515, AUSAs, *id.* § 542, special attorneys to assist U.S. Attorneys, *id.* § 543, and "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). The Attorney General's power to delegate the

---

[3] *See* 28 CFR § 0.1; *see also* DOJ Organization Chart, Sept. 15, 2025, https://www.justice.gov/d9/2025-09/Departmental%20Organizational%20Chart%202025%20-%20508.pdf; Office of Attorney Recruitment and Mgmt., https://www.justice.gov/oarm/about-office.

3

performance of "any" of her myriad functions necessarily encompasses the ability to delegate functions involving the exercise of "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). Such a delegation may take many forms, including the creation of a new "continuing" position, *see id.*, or the assignment of the Attorney General's duties to any "officer" or "employee," *see* 28 U.S.C. § 510, including one newly hired for that purpose, *see* 5 U.S.C. § 3101. Similarly, Congress provided that the Attorney General may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a); *see also id.* § 518(b).

### B. The Attorney General Validly Appointed Mr. Essayli as a Special Attorney in the Central District of California and as First Assistant in that Office

As the government laid out in its Opposition, Mr. Essayli resigned his position as interim United States Attorney on July 29, 2025, before his term was set to expire. (Gov't Opp. Exh. 2.) The same day, under authority including 28 U.S.C. §§ 509, 510, and 515, the Attorney General appointed Mr. Essayli as a Special Attorney and designated him as the First Assistant United States Attorney, in accordance with DOJ regulations, 28 C.F.R. § 0.137(b). (*Id.* Exh. 3.) Those were valid acts.

Even if those two invocations of the Attorney General's authority were legally insufficient to trigger the FVRA, they were sufficient to bring Mr. Essayli into the U.S. Attorney's Office for the Central District of California as a Special Attorney and the First Assistant. Indeed, defendants barely questioned this conclusion in their motions (*see Garcia* Mot. 23 n.25 (citing §§ 515 and 542)), even acknowledging the Attorney General's "limited special-attorney appointment authority in 28 U.S.C. § 515" and "its predecessors" (though nonetheless asserting without elaboration that Mr. Essayli was not "serving as 'an officer or employee' of the U.S. Attorney's Office"). (*Id.* at 34–35.) Only in their reply did defendants contend, briefly, that "the statute invoked for Mr. Essayli's appointment as 'special attorney to the Attorney General' does not authorize the Attorney General to appoint anyone to anything." (*Garcia* Reply 18.) But that is wrong: the Attorney General had the authority to appoint Mr. Essayli as a DOJ lawyer and elevate him to a supervisory position in the Office. There is no requirement that the Attorney General limit an appointment under 28 U.S.C. § 515 to a specific case or cases. *See, e.g., United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976); *Persico*, 522 F.2d at 62;

4

*United States v. Wrigley*, 520 F.2d 362, 369 (8th Cir. 1975). Nor would defendants have standing to complain about which specific DOJ officials are prosecuting their cases—or what titles they use. In any event, there is no support for defendants' suggestion that a Special Attorney under 28 U.S.C. § 515 cannot exercise supervisory authority or be delegated authority to conduct a broad range of litigation. Nor was the Attorney General's appointment of Mr. Essayli limited to § 515; it was based on authority "including" § 515 and specifically mentioned §§ 509 and 510, as well. (Gov't Opp. Exh. 3.)

Finally, although the Attorney General has the authority to designate Mr. Essayli to hold any position in the U.S. Attorney's Office, she also complied with the Department of Justice regulation governing First Assistants. *See* 28 C.F.R. § 0.137(b). "Where there is no position of Principal Deputy to the PAS office, the First Assistant shall be the person whom the Attorney General designates in writing." *Id.* She did so here. (Gov't Opp. Exh. 3 ("I hereby . . . designate him as First Assistant United States Attorney for the Central District of California.").)[4]

### C. If Mr. Essayli Is Not the Acting U.S. Attorney—Or If His Time Expires Under § 3346—He Does Not Cease To Be a Special Attorney or First Assistant

When a First Assistant U.S. Attorney who is serving as Acting U.S. Attorney's time expires under 5 U.S.C. § 3346, he is not expelled from the office. He does not become uniquely unable—among all the other DOJ lawyers in the office—to supervise other lawyers, or to participate in the prosecution of criminal cases. He has the same authority from the Attorney General to prosecute cases as any other member of the Office. The same would be true if his acting-officer time never began. Unfortunately, the two district courts to hold an Acting U.S. Attorney ineligible under the FVRA overlooked this distinction. *Garcia*, 2025 WL 2784640, at *18 (citing *Giraud*, 2025 WL 2196794, at *8–10). As a result, the remedies they imposed were inconsistent with both logic and history.

The Executive Branch has long understood delegations of authority to allow many of the duties

---

[4] Nor can defendants argue that Mr. Essayli's designation as "First Assistant" is somehow conditional on his eligibility to be Acting U.S. Attorney under § 3345(a)(1). *Cf. L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24–26 (D.D.C. 2020). Unlike the appointment in *Cuccinelli*, Mr. Essayli's appointment as Special Attorney and First Assistant U.S. Attorney is not limited to the duration of the vacancy in the office of U.S. Attorney—under the terms of Mr. Essayli's appointment, he would report to the U.S. Attorney once one is confirmed, like any other First Assistant. And unlike an acting official appointed under § 3345(a)(2) or (a)(3), his connection to the office is not limited to his acting status.

5

of an office to be performed during a vacancy when there is no acting official in place. Shortly after the FVRA was enacted, the Office of Legal Counsel determined that "the Act permits" certain "responsibilities to be delegated to other appropriate officers and employees in the agency," because sometimes "there would, for a period, be no one qualified to serve in an acting capacity." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999). Executive officials routinely carry out the functions of a vacant PAS office pursuant to a delegation of authority where no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 634 (2020); Letter from Gary L. Kepplinger, General Counsel, GAO (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP (noting that Steven Bradbury led OLC for years as Principal Deputy Assistant Attorney General once the FVRA's time limits precluded him from serving as the Acting Assistant Attorney General).[5] Numerous Main DOJ litigating components have been led for years by Principal Deputy Assistant Attorneys General, following the expiration of their Acting time limits under § 3346.[6] So too with First Assistants in U.S. Attorney's Offices.[7] In short, a principal deputy remains a principal deputy, and a FAUSA remains a FAUSA. Indeed, the Senate Report for the FVRA expressly recognized that when there is no validly serving acting officer, "[d]elegable functions of the office could still be performed by other officers or employees, but the functions and duties to be performed only by the officer whose appointment is by the President by and with the advice and consent of the Senate could be performed solely by the head of the executive agency." S. Rep. No. 105-250 at 18.

---

[5] GAO has reiterated that understanding in subsequent decisions. *See* https://www.gao.gov/assets/880/874603.pdf (Assistant Attorney General for Office of Legal Policy, Department of Justice); https://www.gao.gov/assets/870/865197.pdf (Legal Adviser, Department of State); https://www.gao.gov/assets/870/869737.pdf (Under Secretary of Agriculture for Food, Nutrition, and Consumer Services, Department of Agriculture).

[6] *Compare, e.g.*, the Civil Division's briefs under Brian Boyton, 2021 WL 1154026 ("Acting Assistant Attorney General") *with* 2024 WL 4262497 ("Principal Deputy Assistant Attorney General"), or the Tax Division's under Caroline Ciraolo, https://www.justice.gov/osg/brief/sperrazza-v-united-states ("Acting Assistant Attorney General"), *with* https://www.justice.gov/osg/brief/baras-v-united-states ("Principal Deputy Assistant Attorney General").

[7] For example, pursuant to a delegation of authority as the First Assistant U.S. Attorney, Elizabeth A. Strange led the U.S. Attorney's Office for the District of Arizona from approximately November 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the U.S. Attorney's Office for the Northern District of Ohio from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the U.S. Attorney's Office for the Western District of Oklahoma from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

1   And courts, too, have endorsed this view, concluding that the FVRA does not preclude non-acting
2   officers from exercising lawfully delegated duties of a vacant PAS office.  *See Arthrex, Inc. v. Smith &*
3   *Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022); *see also Gonzales & Gonzales Bonds & Ins.*
4   *Agency v. DHS*, 107 F.4th 1064, 1073 (9th Cir. 2024) (FVRA's remedial provisions do not prohibit
5   ratification of an official's performance of lawfully delegated duties of a vacant office); *Kajmowicz v.*
6   *Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022) (same).
7           Contrary to the defendants' assertions, the Attorney General's power to run the Department of
8   Justice and delegate functions to subordinates does not render the FVRA superfluous in this context.  A
9   delegee cannot use the title of Acting U.S. Attorney or exercise any exclusive, non-delegable functions
10  of that office.  A delegee may also face litigation regarding the delegability of a particular function.  *See*
11  *United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) (certifications under 18 U.S.C.
12  § 3731).[8]  But the defendants have not contended that the bare authority to supervise these criminal
13  cases is a nondelegable function of the office.  Moreover—and critically—the FVRA applies across the
14  entire Executive Branch, so its meaning cannot turn on the result of its application to one specific office
15  in one specific agency.  Just as many PAS positions (unlike U.S. Attorney) have a PAS first assistant,[9]
16  many agencies (unlike the Department of Justice) require a PAS official to take official action.  *See,*
17  *e.g.*, *Southwest General v. NLRB*, 796 F.3d 67, 80 (D.C. Cir. 2015); *Hooks v. Kitsap Tenant Support*
18  *Servs.*, 816 F.3d 550, 555 (9th Cir. 2016).  To the extent that the primary functions of a Department of
19  Justice lawyer—participating in litigation and supervising others—can be delegated to any DOJ lawyer,
20  that is a feature of the Department of Justice that has little to do with the FVRA.
21          A remedy should be "tailored" to the violation.  *United States v. Arthrex*, 594 U.S. 1, 25 (2021).
22  If there is a violation of § 3345(a)(1), and Mr. Essayli is not the Acting U.S. Attorney, then he should
23  take off that hat.  But this Court need not—and should not—order him to remove the prosecutorial and
24  supervisory hats that many others in this Office wear, sowing chaos and confusion into the internal
25  workings of the U.S. Attorney's Office for the largest district in the country.

---

27     [8] *Cf.* J.M. §§ 9-11.120 (re-submission of charges before a grand jury); 9-11.140 (forthwith subpoena); 9-11.150 (subpoenas to a target, alternatively with Assistant Attorney General approval).

28     [9] *See, e.g.*, https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-acting-leaders.

7