PAMELA J. BONDI
Attorney General
TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Acting Chief, Criminal Appeals Section
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-2400
    E-mail:   alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Nos. 5:25-cr-264-SSS, 2:25-cr-655-MEMF, 2:22-CR-573-FWS |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION |
| JAIME HECTOR RAMIREZ, ISMAEL GARCIA, JR., RONNY ROJAS, | |
| Defendants. | |

Plaintiff United States of America hereby submits its response to defendants' motion for reconsideration (*Ramirez* Dkt. 57) of the Court's order disqualifying Bilal A. Essayli from serving as Acting United States Attorney and denying defendants' motions to dismiss their indictments. (Order, filed at *Ramirez* Dkt. 56, *Garcia* Dkt. 48, and *Rojas* Dkt. 300.)[1]

//

//

---

[1] The defense motions in these three cases were transferred to U.S. District Judge J. Michael Seabright of the District of Hawaii. Order of the Chief Judge 25-126, U.S. District Court for the Central District of California (Sept. 8, 2025). (*See Ramirez* Dkt. 25; *Garcia* Dkt. 24; *Rojas* Dkt. 259.) The government follows the Court's listing of Ramirez as lead defendant. (Order at 7 nn. 4–6.)

The government further relies on its previously filed Opposition and attached exhibits ("Gov't Opp.," *Ramirez* Dkt. 33), its supplemental memorandum regarding remedies ("Gov't Supp.," *Ramirez* Dkt. 50), its oral argument before the Court ("Tr.," *Ramirez* Dkt. 47), the files and records in these cases, and any other evidence that the Court may consider.

Dated: November 26, 2025          Respectfully submitted,

                                         */s/ Alexander P. Robbins*

                                         ALEXANDER P. ROBBINS
                                         Acting Chief, Criminal Appeals Section
                                         Assistant United States Attorney
                                         Attorney for Plaintiff
                                         UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants moved to dismiss their indictments on the ground that Bilal A. Essayli cannot serve as the Acting United States Attorney for the Central District of California under the Federal Vacancies Reform Act, 5 U.S.C. § 3345(a)(1), because he was not the "already in place" First Assistant United States Attorney when the office of United States Attorney initially became vacant. Defendants also included a separate, constitutional argument—that any "interim or acting U.S. Attorney" must "be Senate-confirmed" under the Appointments Clause. (Mot. 49, *Ramirez* Dkt. 10.) As noted at oral argument, this constitutional argument was by far the weaker of the two. (Tr. 31–32.)

Defendants won on the merits of their statutory FVRA argument, although that did not entitle them to dismissal of their indictments. *See United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999). And defendants received the legal ruling they sought: this Court "disqualifie[d] Essayli from participating in or supervising Defendants' cases as Acting United States Attorney." (Order at 49.) Defendants, however, wanted more. They demanded that Mr. Essayli not only be disqualified from serving as *the* United States Attorney (including in an acting capacity), but that this Court prohibit "Mr. Essayli and his supervisees from participating in criminal prosecutions in this district" in *any* capacity. (Mot. 62–63; *see also* Reply 37–38, *Ramirez* Dkt. 38.) That demand, as the government pointed out, was "a non-sequitur." (Gov't Supp. 1; *see also* Tr. 78 ("that's the part that doesn't make sense").) This Court agreed and explained that—because Mr. Essayli has been "properly appointed as a Special Attorney and designated as the FAUSA for the Central District" (Order at 50)—he can perform the functions and duties of any other federal prosecutor or Department of Justice attorney, even if he cannot serve as the U.S. Attorney. That is because authority in the Department of Justice flows from the Attorney General. (Gov't Supp. 2–4.) As the Court further explained, "the statutes and regulations that establish the structure of the Department of Justice . . . . permit the delegation of many—if not most—of the Attorney General's duties. They permit the appointment of officers to perform those delegated duties. And they authorize AUSAs to perform duties that are not exclusive to the office of the United States Attorney." (Order at 52 (citing cases).)

Defendants, however, continue to push back on this reasoning. Short of dismissal, they want a declaration from this Court that Mr. Essayli cannot supervise anyone or prosecute any case in *any* capacity. And so in their motion for reconsideration they elaborate at length on a constitutional argument they briefly appended to the end of their supplemental memorandum: that a DOJ attorney who has been "delegated most (even if not all) of a U.S. Attorney's powers" would be "at least" an "inferior officer" under the Appointments Clause, and that "Congress has never authorized the Attorney General to appoint a never-confirmed individual to wield [such] powers." (Def. Supp., Dkt. 49 at 6–7 (last and first paragraphs)). But that argument was properly rejected by the Court the first time around, and is not any stronger now. To the extent Mr. Essayli (or any other FAUSA) may qualify as an "inferior officer" under the Appointments Clause, *see* U.S. Const. art. II, § 2, cl. 2, he was properly appointed, pursuant to statutory authority, *by the Attorney General*—the head of a department—as this Court has already explained. That is all the Appointments Clause requires. Mr. Essayli is properly serving as First Assistant United States Attorney. Defendant's motion for reconsideration should be denied.

## II. THIS COURT SHOULD NOT REVISIT ITS CORRECT HOLDING THAT THE ATTORNEY GENERAL CAN LAWFULLY DELEGATE HER POWERS TO PROSECUTE AND SUPERVISE CASES

No rule allows for "a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013).[2] Although a district court has "inherent power" to reconsider a prior ruling, reconsideration is subject to the court's sound discretion and "should not be granted[] absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also School Dist. No. 1J, Multnamah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (offering, as examples of such circumstances, "newly discovered evidence," "clear error," and an "intervening change in controlling law").

There was no error at all in the Court's constitutional ruling, much less a clear one. Defendants claim that this Court's "order left the defense's constitutional arguments unresolved," citing the two paragraphs at pages 6–7 of their supplemental memorandum. (Reconsideration Mot. 1.) That is wrong,

---

[2] Defendants cite C.D. Cal. Local Civ. R. 7-18, but that is a civil rule that does not apply to this case. (*See* Reconsideration Mot. 13 n.5.) There is no Local Crim. R. 7-18.

2

though—this Court rejected defendants' statutory *and* constitutional objections in the course of rejecting their delegation challenges. (*See, e.g.*, Order at 49–52.) Defendants had advanced a number of interrelated claims: (1) that "the statute invoked for Mr. Essayli's appointment as 'special attorney to the Attorney General' does not authorize the Attorney General to appoint anyone to anything" (Reply 18); (2) that a significant supervisory delegation, such as supervising "all criminal matters," "would violate § 3347" of the FVRA; and (3) that "[s]uch a delegation would also violate the Appointments Clause" (Def. Supp. 6). The Court rejected the first argument (*see, e.g.* Order at 39 (citing *United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008), in turn citing 28 U.S.C. § 515); *see also* Gov't Supp. 4–5), addressed the second argument by distinguishing between "duties or functions that *only* [the U.S. Attorney] could have performed" and the "functions and duties" of "other duly-authorized positions" (Order at 39, 50–51), and addressed *all three* arguments (statutory and constitutional) by holding that "Essayli was *properly* appointed as a Special Attorney and designated as the FAUSA for the Central District" (Order at 50 (emphasis added)). The Court left nothing "unresolved." The best defendants can claim is that the Court rejected their statutory and constitutional arguments in one fell swoop, by agreeing with the government's argument—only briefly contested by defendants (Reply 18; Def. Supp. 6–7)—that Mr. Essayli was "properly" hired and promoted to FAUSA, without express reference to defendants' Appointments Clause argument. (Order at 50–52.)

But a court's choice of labels in addressing one part of the kitchen sink is not the stuff of discretionary reconsideration. This Court correctly explained that it had "no basis to preclude Essayli from performing the lawful duties of a FAUSA." (Order 50.) That statement was correct, and it applies as much to constitutional bases as it does to statutory ones. An act is not "proper" if it is unconstitutional, as defendants appear to agree. (Reconsideration Mot. 14 (conceding that the Court's conclusion is inconsistent with their constitutional argument).) To the extent defendants' complaint is the Court failed to use the words "Constitution," "constitutional," or "Appointments Clause"—since the Court's discussion occurred in the context of addressing the FVRA (*see* Order at 50)—the Court simply could have noted (for example, in a footnote following the "no basis" sentence) that the same logic applies to defendants' constitutional argument: that, in addition to the FVRA, the Appointments Clause also poses no bar to Mr. Essayli's performing the lawful duties of a FAUSA, because even if Mr.

3

Essayli is serving as an "inferior officer" he is doing so at the direction of the Attorney General (Order at 29), which satisfies the constitutional requirement, *see, e.g.*, *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023). Again, lack of a footnote rejecting a backup constitutional argument—when that constitutional argument fails along with the statutory argument—is not a proper ground for a motion to reconsider. This Court need not delve too far into defendants' attempt to elaborate on the constitutional component of their original argument that the Court properly found to lack merit.[3]

### III. THE ATTORNEY GENERAL LAWFULLY APPOINTED MR. ESSAYLI AS A SPECIAL ATTORNEY AND LAWFULLY DESIGNATED HIM AS THE FAUSA FOR THE CENTRAL DISTRICT

In any event, defendants' argument fails on the merits. As the government pointed out in its initial response to defendants' motions (Gov't Opp. 12), and as this Court concluded, "Attorney General Bondi appointed Essayli as a Special Attorney and designated him as the FAUSA for the Central District." (Order 29.) "Those were valid acts" under the statutes and regulations governing the Department of Justice, including 28 U.S.C. §§ 509, 510, and 515, and 28 C.F.R. § 0.137(b). (Gov't Supp. 4.)

Under the regulation, the "First Assistant" to a PAS office in the Department of Justice—when there is no "Principal Deputy" position (which is the second-in-command label in Main DOJ components, like the National Security Division and the Antitrust Division)—"shall be the person whom the Attorney General designates in writing." (Order at 15 n.9 (quoting the regulation); *see also* Gov't Supp. 5.) Here, it is undisputed that the Attorney General did, in fact, designate Mr. Essayli as First Assistant in writing. (Gov't Opp. Exh. 3 ("I hereby . . . designate him as First Assistant United

---

[3] Discretionary reconsideration is additionally inappropriate here because none of defendants' arguments will make any meaningful difference to the cases against them: this Court has already explained why dismissal is unwarranted. (Order at 40–44 (citing *Gantt*), inter alia).) Nor will this Court's decision be the last word on the underlying legal issues: the Nevada FVRA case is currently before the Ninth Circuit, and it may be argued as soon as February 2026. *See United States v. Jackson*, Ninth Cir. No. 25-6214 (Dkt. 19); *see also id.* (Dkt. 22) at 66–70 (raising defendants' inferior-officer Appointments Clause argument). And in any event, defendants *won* on their primary claim—the Federal Public Defender recently touted his Office's "successfully stripping away" Mr. Essayli's title as Acting United States Attorney. *See* Cuauhtemoc Ortega, LinkedIn, https://www.linkedin.com/posts/cuauhtemoc-ortega-1ab31022b_yesterday-my-office-secured-its-third-consecutive-activity-7392583970883837953-Dz8C/ (last visited Nov. 22, 2025). Even if there were merit to defendants' additional constitutional arguments, these cases would be poor candidates for an exercise of this Court's discretion to reconsider its previous order.

States Attorney for the Central District of California.").) That analysis is straightforward, and the Court's decision got it right. Mr. Essayli was validly appointed as a "Special Attorney" in the Department of Justice and validly designated to a supervisory position in the Central District of California (specifically, "First Assistant"). That appointment and designation were both within the Attorney General's power: she had the authority to bring Mr. Essayli into the Department and send him to the Central District, and she had the authority to make him a supervisor in that district. (In this case, as First Assistant, but she also could have designated him Criminal Division chief, for example, or Executive Assistant U.S. Attorney.) All "Department of Justice attorneys" work under and "exercise the power of the Attorney General." (Gov't Supp. 3; *see also id.* at 2–4 (laying out the history and structure of the Department of Justice).) This Court acknowledged that structure in its decision. (Order at 52.) And as the government noted in its supplemental briefing (which defendants do not address), *thousands* of DOJ attorneys—and a great many supervisors—hold their officers under "the Attorney General's authority to appoint attorneys and delegate powers to them," where AUSAs are "but one part of that larger whole." (Gov't Supp. 3; *see also* Tr. 69–70; Tr. 74–75.) Nor do defendants acknowledge, in their discussion of the various DOJ statutes (Reconsideration Mot. 8–13), that the Supreme Court has already held those statutes—specifically citing 28 U.S.C. §§ 509, 510, 515, and 533—"vest" in the Attorney General "the power to appoint subordinate officers to assist him in the discharge of his duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974).[4] Defendants cannot seriously contend that most of the Department of Justice is unconstitutional. (*See* Gov't Supp. 3 n.3.)[5]

---

[4] The government's previous filings did not cite *Nixon* because defendants did not challenge the Attorney General's authority to appoint subordinate officers until their supplemental remedies brief (Def. Supp. 6–7), and in passing at Reply 18, as noted above. But this is not an unsettled issue. *See also* Gov't Supp. 2 (noting the original statutory provision in 1870 allowing the Attorney General to "retain[]" attorneys); *id.* at 2–3 (noting the 1930 amendment, which introduced the term "special attorneys"); *id.* at 3 (noting the 1948 amendment, which did not question the Attorney General's authority to hire DOJ lawyers). The statutes and regulations around which the Department of Justice is built are not novel. *See also* Walter Dellinger, Creation of an Office of Investigative Agency Policies 4 (O.L.C. Mem. Oct. 26, 1993).

[5] Indeed, the district court's recent decision in *United States v. Comey*—although in very different factual circumstances, addressing a different statutory challenge—also notes this well-established authority. Order Dismissing Indictment at 20, E.D. Va. No. 25-cr-272, Dkt. 213. And in the New Jersey case, where the government appealed and defendants are appellees in the Third Circuit, there has never been any dispute that the Attorney General has statutory authority to appoint Special Attorneys and supervisory prosecutors, including First Assistants. *See, e.g.*, Giraud Answering Br. 11–

*(footnote cont'd on next page)*

5

Short of that, then, defendants are left to claim that the Attorney General could not validly designate Mr. Essayli as a *supervisory* attorney in the Central District of California—or at least not as "First Assistant." But that claim makes no sense either. Defendants contend that the Appointments Clause prohibits Mr. Essayli from serving as FAUSA because, "in his present capacity as first assistant, Mr. Essayli is wielding powers broad and enduring enough that they make him at least an inferior officer." (Reconsideration Mot. 1.) But again, to the extent a FAUSA qualifies as an inferior officer, Mr. Essayli was *designated as FAUSA in writing* by the Attorney General, under a statutory and regulatory structure that allows the Attorney General to appoint DOJ lawyers and assign them responsibilities. U.S. Const. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."). So too for Principal Deputies in Main DOJ, for the same reason. And other supervisors, too—Deputy Solicitors General, for example, who have no separate authorizing statute but who have argued before the Supreme Court for decades[6] and whose existence has been expressly acknowledged by Congress in 18 U.S.C. § 3742(b). And 28 U.S.C. § 515(a) specifically contemplates the delegation of authority up the level possessed by U.S. Attorneys. *See also, e.g.*, *Nixon*, 418 U.S. at 692, 694 ("Special Prosecutor" was properly appointed by the Attorney General as "a subordinate . . . officer of the Executive Branch" with "unique authority and tenure" under 28 U.S.C. §§ 510 and 515, inter alia). None of this is unconstitutional. The Appointments Clause is satisfied.[7]

---

12, *United States v. Giraud*, 3d Cir. No, 25-2635, Dkt. 47; Pina Answering Br. 55–56, 3d Cir. No. 25-2636, Dkt. 51. Rather, the defendants in the New Jersey case advance a variant of the second of the three arguments described above: that delegating a Special Attorney or FAUSA "*all* the powers of a U.S. Attorney" violates § 3347 of the FVRA. *Id.* (emphasis added). But of course that is not the government's position, there or here. *See, e.g.* Reply Br. 20–21, *United States v. Giraud*, 3d Cir. No, 25-2635, Dkt. 68. All agree that a FAUSA (or criminal chief or EAUSA) cannot "perform duties . . . exclusive to the office of the United States Attorney." (Order at 52; *id.* at 33 ("the Department of Justice may not use Special Attorney and delegation statutes to designate someone as the Acting United States Attorney").)

[6] *See, e.g.*, Adam Liptak, "A 'Citizen Lawyer' Gets a Standing Ovation at the Supreme Court: In a remarkable scene, the justices applauded Edwin S. Kneedler, a government lawyer with a reputation for candor, care and integrity." N.Y. Times (Apr. 28, 2025), *available at* https://www.nytimes.com/2025/04/28/us/politics/supreme-court-lawyer-standing-ovation.html.

[7] Defendants also steadfastly blur the distinction between U.S. Attorney and other supervisory prosecutors in the Department of Justice. (*See, e.g.*, Reconsideration Mot. 15; Def. Supp. 6 ("lion's share of the powers"); *id.* ("looks and quacks like").) This Court's order explained why that is erroneous. (*See, e.g.*, Order at 52 (noting that there are many duties delegated to federal prosecutors by

*(footnote cont'd on next page)*

Later in their reconsideration motion, however—after contending that FAUSAs are so important they must be designated by the Attorney General (as Mr. Essayli was)—defendants simultaneously contend that the Attorney General could not validly designate Mr. Essayli as First Assistant under 28 C.F.R. § 0.137(b) because the office means nothing outside the context of the FVRA and has "no functions and duties" and "carries no powers" at all. (Reconsideration Mot. 9, 15.) But defendants cannot have it both ways. If a FAUSA has such "significant authority" that he qualifies as an inferior officer (Reconsideration Mot. 3), then it is hard to see how such a position has no power. Regardless, the government already addressed a variant of this argument (tying the FAUSA position to FVRA eligibility) in its remedies memorandum, which defendants have never addressed. (Gov't Supp. 5 n.4.) The "First Assistant" designation does not turn on the official's eligibility for acting status under the FVRA. A First Assistant who "times out" as Acting under 5 U.S.C. § 3346—or who is ineligible for some reason—is still a First Assistant. (*Id.* at 5; *see also id.* at 6 (A "principal deputy remains a principal deputy, and a FAUSA remains a FAUSA."); *id.* at 6 n.6 (offering examples).) Anyway, defendants' premise is wrong. It is not true that the "First Assistant" position exists only under the FVRA: there were FAUSAs before the FVRA, as well. *See, e.g.*, *United States v. Wunsch*, 84 F.3d 1110, 1118 n.12 (9th Cir. 1996) ("Moreover, if the judicial narrowing claimed by California was so obvious, we must ask ourselves how a talented First Assistant United States Attorney for the Central District of California *and* a learned California federal district court judge could have both missed that interpretation and concluded that section 6068(f) *did* apply to Swan's conduct."); *United States v. Fields*, 766 F.2d 1161, 1164 (7th Cir. 1985) ("Jerome Frese, who had since become First Assistant United States Attorney for the Northern District of Indiana, testified at length about the prior negotiation and execution of the plea agreement."); *United States v. Flood*, 462 F. Supp. 99, 100 (D.D.C. 1978) ("Consideration ended September 9, 1964, when the First Assistant, acting as head of the Division (in my absence), approved a final staff recommendation not to prosecute.").

---

the Attorney General "that are not exclusive to the office of the United States Attorney," in contrast to other Executive Branch agencies where the governing statutes and regulations are "more restrictive" and "limit[ed]" in terms of the power delegated below the level of PAS officers).) As the government explained previously, to the extent "that the primary functions of a Department of Justice lawyer—participating in litigation and supervising others—can be delegated to any DOJ lawyer, that is a feature of the Department of Justice that has little to do with the FVRA." (Gov't Supp. 7.)

Finally, in an effort to get out from under the fact that their Appointments Clause argument makes no sense because Mr. Essayli was, in fact, appointed and designated by the Attorney General, defendants appear to advance a novel clear-statement requirement for the Appointments Clause. (Reconsideration Mot. 6–8.) That is a new argument that appears for the first time in their motion to reconsider, which this Court need not address for that reason. But it is also an argument without support in any precedent or caselaw government counsel are aware of, and certainly not in the authorities defendants cite. (*Id.* at 7–8 (citing *Weiss v. United States*, 510 U.S. 163, 170–71 (1994), and Justice Thomas's concurring opinion in *Trump v. United States*, 603 U.S. 593, 643 (2024)).) Indeed, *Weiss* cuts *against* defendants' arguments—the question there was whether a military officer, already subject to Senate confirmation, was required by statute to be nominated and confirmed a *second* time to serve as a military judge. 510 U.S. at 170 ("Petitioners contend that the position of military judge is so different from other positions to which an officer may be assigned that either Congress has, by implication, required a second appointment, or the Appointments Clause, by constitutional command, requires one."). The Court held that the *Appointments Clause* was not triggered "by implication," and that congressional silence could not be used to infer that a military judge constituted a "separate office" that required separate confirmation. *Id.* at 170–71. A military officer can be designated as a "lawyer or [a] pilot," and moving from one job to the other does not mean entering a new "office" that requires a second confirmation. *Id.* at 171.

Justice Thomas's concurring opinion in *Trump* is no better for defendants' position. Justice Thomas—in a separate opinion joined by no other Justice—expressed doubt that the office of "Special Counsel" in the Department of Justice "has been 'established by Law,' as the Constitution requires." 603 U.S. at 643 (quoting the Appointments Clause); *see also id.* at 645 (citing *United States v. Maurice*, 26 F. Cas. 1211, 1216 (C.C.D. Va. 1823) (Marshall, C.J.)). He noted that the statutes relied on by the Attorney General, "28 U.S.C. §§ 509, 510, 515, 533," are "statutes of a general nature," and that "[n]one . . . appears to create an office for the Special Counsel, and especially not with the clarity typical of past statutes used for that purpose." 603 U.S. at 647–48 (citing the statute that "created an office for a 'special counsel' to investigate the Teapot Dome Scandal"); *cf. id.* at 649 (acknowledging the Court's statement in *Nixon* referring "to the cited statutes as supporting the appointment of the

8

Special Prosecutor"). But whatever one thinks about Justice Thomas's *dubitante* opinion on the office of Special Counsel and the legal history of Teapot Dome, that has little to do with the Attorney General's ability to appoint non-AUSA Department of Justice lawyers, assign them to any of the 93 U.S. Attorneys' Offices around the country, and designate some of them as "First Assistants" in those offices. In any event, as defendants agree (Reconsideration Mot. 7), a "clear-statement rule" is not a "magic words" requirement. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023). If Mr. Essayli can be appointed a "Special Attorney" by the Attorney General and brought into the Department of Justice, he can also be designated by the Attorney General to a supervisory position in the Department, including a role like First Assistant in a U.S. Attorney's Office or Principal Deputy in a Main DOJ component. And if that additional role makes him an "inferior officer" under the Appointments Clause—which is not at all clear, *cf. Weiss*, 510 U.S. at 170–71; *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (position must be "continuing" rather than "occasional and temporary")—it is at least clear that the Clause's requirements are satisfied, because it was the Attorney General who exercised her lawful authority to put him there.

* * *

In sum, as this Court held, Mr. Essayli "was properly appointed as a Special Attorney and designated as the FAUSA for the Central District." (Order at 50 (emphasis added).) To the extent he needed to be appointed to that position by a "Head[] of Department," U.S. Const. art. II, § 2, cl. 2; *Duenas*, 78 F.4th at 1072, he was. This Court's conclusion that he is ineligible to serve as Acting U.S. Attorney under the FVRA does not mean he cannot prosecute and supervise cases in the Central District of California. All of this makes logical sense: "When a First Assistant U.S. Attorney who is serving as Acting U.S. Attorney's time expires under 5 U.S.C. § 3346, he is not expelled from the office. He does not become uniquely unable—among all the other DOJ lawyers in the office—to supervise other lawyers, or to participate in the prosecution of criminal cases." (Gov't Supp. 5.)

As the government argued previously, a remedy should be "tailored" to the violation. *United States v. Arthrex*, 594 U.S. 1, 25 (2021). This Court found a violation of § 3345(a)(1) in these cases, held that Mr. Essayli could not serve as Acting U.S. Attorney, and ordered him to take off that hat. He did so. The government had the right to appeal that decision under 18 U.S.C. § 3731 and chose not to;

9

1  defendants will have the right to appeal whatever parts of this Court's decision they disagree with once
2  there are "final decisions" in these cases, 28 U.S.C. § 1291, and they can advance their arguments
3  before the Ninth Circuit then.  But in the meantime, there is no merit to their attempt to relitigate claims
4  already rejected by this Court through a motion for reconsideration.  Their motion should be denied.