CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES ANGLIN FLYNN (Bar No. 337608)
Email: james_flynn@fd.org
DREW HAVENS (Bar No. 306280)
AYAH A. SARSOUR (Bar No. 340280)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Fax: (213) 893-0081

Attorneys for Defendants
ISMAEL GARCIA, JR. &
JAIME HECTOR RAMIREZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-655-MEMF |
| *Plaintiff*, | |
| v. | |
| ISMAEL GARCIA, JR., | |
| *Defendant*. | |
| UNITED STATES OF AMERICA, | Case No. 5:25-cr-264-SSS |
| *Plaintiff*, | |
| v. | **Defendants' Reply in Support of Motion for Limited Reconsideration of Order on Motions to Dismiss and to Disqualify** |
| JAIME HECTOR RAMIREZ, | |
| *Defendant*. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

I.   Mr. Essayli is serving as at least an inferior officer. ..............................2

II.  The Appointments Clause requires confirmation of inferior officers,
     unless Congress clearly provides otherwise by statute. .........................5

III. No statute exempts Mr. Essayli from the Appointments Clause's
     confirmation requirement .......................................................................7

     III.A.  5 U.S.C. § 3345 and 28 U.S.C. § 546 ........................................7

     III.B.  28 C.F.R. § 0.137(b) ..................................................................8

     III.C.  28 U.S.C. §§ 509 and 510 ..........................................................8

     III.D.  28 U.S.C. §§ 542 and 543 ..........................................................8

     III.E.  28 U.S.C. § 515 ...........................................................................9

     III.F.  The String-Cite Theory ...............................................................9

IV.  The Court should resolve the constitutional issue and reconsider its
     remedies analysis ...................................................................................11

# INTRODUCTION

The government says this Court has already decided that Mr. Essayli's supervision complies with the Appointments Clause. The Court did so implicitly, it claims, by deeming that service "proper" without mentioning the Constitution. R.R. 3.[1] That holding was so minor that it could have been a footnote, says the government. And now, for reasons it never explains, the government really does not want the Court to resolve the issue expressly.

The Appointments Clause deserves at least that footnote. It is not, as suggested by the government's effort to avoid a ruling, a "trifling technicality." *Trump v. United States* (*Trump S. Ct.*), 603 U.S. 593, 650 (2024) (Thomas, J., concurring). It is a foundational imperative. Of the six federal judges to have considered these challenges, this Court stands alone in endorsing the continued supervisory service of an improperly appointed temporary U.S. Attorney.[2] If the law is to be different in this jurisdiction, then Mr. Ramirez, Mr. Garcia, the appellate courts, and the residents of the Central District should be provided an explanation. The unique position of this by-designation Court also favors resolving the constitutional issue explicitly: the resident district judges stand empowered to appoint a leader for the U.S. Attorney's Office, and whether the current leader is serving unconstitutionally would reasonably be of paramount concern.

---

[1] Citations to "R.M." and "R.R." refer to the reconsideration motion and response. *Garcia* Dkt. 50, 52. Citations to "Mot.," "Resp.," and "Tr." refer to the original filings on and hearing for the motion to dismiss. *Garcia* Dkt. 21, 36, 44.

[2] *United States v. Giraud*, 795 F. Supp. 3d 560, 592–604 (D.N.J.), *aff'd*, No. 25-2635, 2025 WL 3439752, at *8–12 (3d Cir. 2025) (*Giraud 3d Cir.*); *United States v. Garcia*, No. 2:25-cr-230, 2025 WL 2784640, at *11–14, 18 & n.14 (D. Nev. Sept. 30, 2025), *appeal docketed*, No. 25-6214 (9th Cir. Oct. 2, 2025).

1    Following their district-wide recusal, only this Court can provide the answer.

2        On the merits, the government insists that the Appointments Clause is satisfied

3    because the agency head appointed Mr. Essayli.  But that skips the first step of the

4    analysis: the agency head's action must be authorized by statute in the first place.  On

5    that point, the government is circumspect.  It never comes out and says directly which

6    statute authorized Mr. Essayli's appointment.  Instead, it turns to hand-waving and

7    implication, including its suggestion that the Attorney General's appointment power

8    arises from the general "statutory and regulatory structure" writ large.  R.R. 6.

9        That is the whole ballgame.  The Appointment Clause requires confirmation

10    unless Congress has passed a law saying otherwise.  Congress has never done so with

11    respect to the office and powers Mr. Essayli now claims.

## I.    Mr. Essayli is serving as at least an inferior officer.

13        The government embraced Mr. Essayli's inferior-officer status at the start of this

14    motion practice, but it now waffles.  *Compare* Resp. 15, *with* R.R. 2, 3–4, 6, 7, 9.  The

15    most direct statement of the government's position is that Mr. Essayli's officer status is

16    "not at all clear."  R.R. 9.

17        The Court should reject that tactic at the outset.  The government should not be

18    permitted to litigate this case initially on the premise that Mr. Essayli "is an inferior

19    officer," Resp. 15, and now backtrack to contend that he may not be.[3]

20        At any rate, the suggestion that Mr. Essayli might be a mere *employee* is absurd in

21    context of the case law.  The reconsideration motion described the two prongs—

22    _____

23    [3]   R.R. 2 ("To the extent"); R.R. 3 ("even if"); R.R. 6 ("to the extent a FAUSA
         qualifies as an inferior officer"); R.R. 7 ("If a FAUSA has such 'significant

24       authority'"); R.R. 9 ("if that additional role makes him an 'inferior officer'").

significant authority and tenure—and the government has not disputed that legal framework. *See* R.M. 2–5; R.R. 7, 9. Mr. Essayli is at least an inferior officer by both measures.

**Significant authority.** The government does not engage with the case law or the legal standard for significant authority. Nor does it cite or discuss any of the long line of cases holding that U.S. Attorneys wield at least inferior-officer power. *See* R.M. 4.

Exercising all those powers, Mr. Essayli is at least an inferior officer. In particular, the government cannot dispute that Mr. Essayli has authority at least on par with that of a low-level revenue officer, a clerk in an assistant treasurer's regional officer, or a Naval Academy graduate sent home to await further military orders. *See* R.M. 4–5 (collecting cases). Nor can it dispute that Mr. Essayli's prosecutorial powers—like arrest, seizure, and indictment—are at the heartland of the sovereign authority that satisfies the test. R.M. 3–4.

One other recent development is of note in this regard. In these proceedings, the government has cast doubt on whether the U.S. Attorney is the official responsible for approving charges in his or her district.[4] In the Eastern District of Virginia, the government has now confirmed that this is indeed a duty the U.S. Attorneys are "tasked with," one that "rests entirely in [their] discretion."[5] It is not clear how Mr. Essayli

---

[4] *See, e.g.*, Resp. 20 ("Defendants have offered no reason to believe that Mr. Essayli was personally involved in approving or filing the indictments in their specific cases…."); Tr. 85 ("That's—the justice manual says the U.S. attorney has plenary authority over charging decisions, right? That is not the same thing as saying that he has to sign or even look at every indictment.").

[5] Gov't Opp'n to Mot. re: Vindictive & Selective Prosecution 17, *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Nov. 3, 2025), Dkt. 138.

exercised that discretion in these cases, where the government concedes he was not involved in charging decisions. *See* Tr. 84–85. But whether Mr. Essayli must or merely may make the charging decisions in this district, those decisions bind the government, and he is wielding inferior-officer power.[6]

**Tenure.** The only prong the government appears to dispute—in a parenthetical explanation to a string citation—is tenure. *See* R.R. 9. In that regard, the government notes that an inferior officer's service must be "'continuing' rather than 'occasional and temporary.'" R.R. 9. The reconsideration motion agreed with that standard and explained in detail why it was met here. R.M. 2–3.

The government does not respond to those arguments. Its parenthetical appears to suggest that Mr. Essayli's service is temporary, but that is belied by the government's own evidence. *E.g.*, Resp. Ex. 4, at 1 ("This appointment is indefinite but may be terminated at any time without cause."). Nor are Mr. Essayli's tasks episodic or case-by-case. *See* R.M. 2–3. He is paid a salary to supervise all cases in the district on a day-to-day basis—whether there are five indictments or fifty—not a per-case fee for occasional duties. *Id.* (citing *United States v. Germaine*, 99 U.S. 508, 510–12 (1878)).

**"First assistant" authority.** One of the government's points is so misleading it warrants separate discussion. The government tries to back the defense into a corner: "If a FAUSA has such 'significant authority' that he qualifies as an inferior officer, then it is hard to see how such a position has no power." R.R. 7 (citation omitted).

---

[6] On supervision, the reconsideration motion explained why an officer is still an officer, even if his binding decisions are subject to revision or review. R.M. 5–6. That is true for Mr. Essayli, even though the government claims his decisions are reviewable by the Attorney General and Deputy Attorney General. *Id.* The government has not disagreed.

*UNITED STATES v. GARCIA & RAMIREZ*                                    RECONS. REPLY – 4

The simple answer is that Mr. Essayli is exercising power he does not possess. He has transcended the land of statutes. He *is* wielding significant authority, but the whole point is that he lacks that authority: it was not validly conferred on him by Congress. No powers are conferred on "*a* FAUSA" by statute, *id.*, because the FAUSA position is absent from the statutes, R.M. 9–10. But *this FAUSA* has inferior-officer powers, because he is exercising powers he has never been conferred. *E.g.*, R.M. 9 & n.2. This is just another way for the government to cast the trick it has played in benign language: appoint an ineligible individual to a vacant office, give him a different title not set out in the statutes, and thereby avoid all statutory limits on the appointment.

## II. The Appointments Clause requires confirmation of inferior officers, unless Congress clearly provides otherwise by statute.

As the reconsideration motion explained, inferior officers must be confirmed by the Senate unless Congress has provided otherwise by statute under the Excepting Clause. R.M. 6–8. The government does not squarely disagree.

**Statutory vs. regulatory vesting.** Reading between the lines of the government's response, it appears the government may be trying to shoehorn in a more permissive test—one that would allow agency regulations to substitute for statutes in the Excepting Clause analysis. For example, in response to the defense's call to identify a statutory office authorizing Mr. Essayli's service, the government repeatedly cites a regulation, *see* R.R. 4, 7 (citing 28 C.F.R. § 0.137(b)), and relies not on any one statute but on the general "statutory and regulatory structure" of the Department, R.R. 6.

The government cites no authority for the proposition that the executive *itself*, through agency regulation, can create an office and except it from the Appointments

1 Clause without congressional approval. That is not the law. R.M. 6–7.[7] As

2 Judge Currie recently confirmed in finding an Appointments Clause violation in

3 Virginia, "by Law" means "by statute." *United States v. Comey*, No. 1:25-cr-272, 2025

4 WL 3266932, at *10 (E.D. Va. Nov. 24, 2025).

5      The government's reliance on regulations to satisfy the Appointments Clause

6 makes no sense. The Clause was a deliberate negation of the executive's unilateral

7 authority to create and fill new offices. Abuse of that authority drove a revolution,[8] and

8 the Founders made clear they were transferring that power to Congress: "the Congress

9 may by law vest the Appointment." U.S. Const. art. II, § 2, cl. 2. The government

10 would have the Court rewrite the Clause: "the Congress may by law, or the Heads of

11 Departments may by regulation, vest." That would transform the Appointments Clause

12 into a blank check for the executive—precisely what the Founders sought to prevent.

13      **Clear-statement rule.** The government also pushes back, R.R. 8, against the

14 defense's argument that the Court "should expect that Congress will speak clearly when

15 it decides to deviate from the default Senate-confirmation requirement," R.M. 7. It says

16 that this is "an argument without any support in any precedent or caselaw." R.R. 8. But

17

18           ——————————

19 [7] *Accord* U.S. Const. art. II, § 2, cl. 2 ("the Congress may by Law vest"); *Myers v. United States*, 272 U.S. 52, 162 (1926) ("Congress must determine, first…."); *United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The head of a department has no constitutional prerogative of appointment to offices independently of the legislation of congress…."); *Trump S. Ct.*, 603 U.S. at 643 (Thomas, J., concurring) ("[The President] cannot create offices at his pleasure. If there is not law establishing the office that the Special Counsel occupies, then he cannot proceed with this prosecution.").

23 [8] *E.g.*, *U.S. Declaration of Independence* (1776) ("He has erected a multitude of New Offices…."); *Freytag v. Comm'r*, 501 U.S. 868, 883–84 (1991).

*UNITED STATES v. GARCIA & RAMIREZ*                                    RECONS. REPLY – 6

the relevant section of the government's brief utterly ignores the *Trump* decision, which set out a persuasive case for a clear-statement rule, then ultimately declined to settle the matter—because the appointment there failed regardless. *United States v. Trump*, 740 F. Supp. 3d 1245, 1261–63 (S.D. Fla. 2024), *appeal dismissed*, No. 21-12311, 2025 WL 2017539 (11th Cir. Feb. 11, 2025); *see also Trump S. Ct.*, 603 U.S. at 648 (analyzing statutes for "the clarity typical of past statutes used for" Excepting Clause purposes).

At any rate, as explored further below, the government has not identified a statutory authorization under any standard. There has certainly been no statement (clear or otherwise) by Congress that a "first assistant" office exists, nor any statement that such a first assistant can wield inferior-officer powers without satisfying the default confirmation requirement. Across several decades, the consistent message from Congress has been: if the executive wants to appoint someone to wield U.S. Attorney powers, it can! But it must do so through one of the many statutory paths Congress has created—not one the executive has devised for itself. *See* R.M. 7–9, 16–17; 5 U.S.C. § 3345; 28 U.S.C. §§ 541, 546.

## III. No statute exempts Mr. Essayli from the Appointments Clause's confirmation requirement

The government's approach to the statutory analysis is telling: never once does it identify a specific statute that authorized Mr. Essayli's appointment. None of them do, as reiterated below. *See* R.M. 8–13. The government hopes that mushing the statutes together into a string cite will change the picture. It does not.

### III.A. 5 U.S.C. § 3345 and 28 U.S.C. § 546

The government agrees that the "Court found a violation of § 3345(a)(1) in these cases" and does not otherwise suggest that that statute authorizes Mr. Essayli's

continued service.  R.R. 9; *see also* R.M. 8–9.  The government does not mention § 546, which does not apply for the reasons the defense has explained.  *See* R.M. 8–9.

### III.B.     28 C.F.R. § 0.137(b)

The government similarly does not contend that 28 C.F.R. § 0.137(b) itself excepted Mr. Essayli from the confirmation requirement.  Nor could it, because mere regulations cannot accomplish that objective.  *Supra* at 5–6.

The government's review of the historical background of first assistants does not help its case.  *See* R.R. 7.  All the government establishes is that first-assistant labels have long been used as an internal agency tool for ordering succession in the event of a vacancy.[9]  None of that history even hints that Congress ever intended to create a "first assistant" statutory office or to except that office from the confirmation requirement.

### III.C.     28 U.S.C. §§ 509 and 510

The government nowhere argues that either § 509 or § 510 alone authorizes Mr. Essayli's service.  Neither does so, as the defense has explained.  R.M. 10.  To the extent these sections act in combination with others, they are addressed below.

### III.D.     28 U.S.C. §§ 542 and 543

The government nowhere mentions § 542, the statute authorizing the appointment of assistant U.S. Attorneys.  It further concedes that Mr. Essayli is a "non-AUSA Department of Justice lawyer[]."  RR. 9.  The government similarly nowhere mentions

---

[9]  As much as the government emphasizes the role of § 0.137 in setting up the position of first assistant, the government never actually identifies any powers that Mr. Essayli obtained as a result of his designation to that office.  *See* R.R. 1, 4, 6–7.  That makes sense: the regulation on its face is only concerned with the ordering of succession under the Federal Vacancies Reform Act, and its text plainly does not assign any powers to the designated first assistant.  Def. Suppl. 4–5; R.M. 9–10.

§ 543, the statute authorizing the appointment of special attorneys.

For the reasons the defense has already explained—and the government has not disputed—neither provision authorizes Mr. Essayli's appointment, and neither excepts his service from the confirmation requirement.  R.M. 10–11.

### III.E.    28 U.S.C. § 515

The government asserts § 515 only in combination with several other provisions—a combination discussed in the next section below.  It correctly declines to argue that § 515 authorizes Mr. Essayli's service on its own, because § 515 does not authorize appointments at all.  R.M. 11–13 (citing *Trump*, 740 F. Supp. 3d at 1267–76; *Trump S. Ct.*, 603 U.S. at 648 (Thomas, J., concurring)).

The government does not dispute (or even mention) the defense's interpretation of § 515's text, which applies only to individuals already retained, in the past tense, under some other valid Department authority.  R.M. 11–12.  Nor does it dispute the defense's argument about the statutory context and § 519.  R.M. 12–13 (citing *Trump*, 740 F. Supp. 3d at 1270).

### III.F.    The String-Cite Theory

At the end of its statutory rope, the government turns to a string citation, asking this Court to glean appointment authority without reference to any particular text that Congress enacted.  According to the government, Mr. Essayli's service complies with the Appointments Clause "under the statutes and regulations governing the Department of Justice, including 28 U.S.C. §§ 509, 510, and 515, and 28 C.F.R. § 0.137."  R.R. 4.

In and of itself, that tactic should give the Court pause.  When Congress has not clearly excepted an office from the Appointment Clause's confirmation requirement, this Court should refuse to do so itself by stitching Congress's enactments together.

As discussed above, none of these statutory provisions independently authorizes Mr. Essayli's wielding of inferior-office powers without Senate confirmation. They similarly do not do so when cobbled together into a string citation. The government does not offer any textual analysis of how that could be possible. Indeed, the government offers no textual analysis at all, nor any explanation of how the Court should read between the statutory lines or structure to divine the statutory authorization that the government insists is in there somewhere. It points to no case where a court has analyzed and applied the statutes in the manner it now asks this Court to adopt.

Instead, the government relies on a stray remark in *United States v. Nixon*. R.R. 5 (citing 418 U.S. 683, 694 (1974)).[10] Based on *Nixon*, it says that its appointment authority under this string citation is "not an unsettled issue." R.R. 5 n.4. But it does not mention that that view was eviscerated in *Trump*, where the Court walked in painstaking detail through each of the individual statutory provisions and their history. 740 F. Supp. 3d at 1263–83.

Having done so, the *Trump* Court then turned to the string-cite theory. It reviewed "all available filings" in the two *Nixon* cases, *id.* at 1285 n.46, and its sound conclusion was that "the statutory-authorization question was not at issue" in *Nixon*, it was "absen[t] from the record," and the string citation to Department organic statutes was merely part of "a prefatory, stage-setting paragraph." *Id.* at 1290. The remark about statutory authority was, in short, "dictum." *Id.* at 1291. And even reduced to

---

[10] In addition to the statutes cited here, *Nixon* included 28 U.S.C. § 533. The government does not advance a § 533 argument here, and rightly so: that section provides for the appointment of FBI officials and is irrelevant to Mr. Essayli's service. *See Trump*, 740 F. Supp. 3d at 1276–82; *Trump S. Ct.*, 603 U.S. at 648–49 (Thomas, J., concurring).

dictum, the *Nixon* remark is utterly unpersuasive: it did "not engage in any statutory analysis," and it does not account for the subsequent sea change in the Supreme Court's Appointments Clause jurisprudence. *Id.* at 1291–92.

At the end of the day, the government's string-cite theory is just another way of saying that the executive has a blank check to appoint whomever it desires. And the government's theory is limitless: any position at the Department of Justice could be replicated under a different name and be filled indefinitely with an illegible and non-confirmed person. No one of these statutes authorizes Mr. Essayli's service without confirmation, and the Court should reject the government's attempt to combine them and wring out an implied authorization.

## IV.    The Court should resolve the constitutional issue and reconsider its remedies analysis

**Reconsideration.**  The government has misled this Court about the local rules. The government faults the defense for citing to the local civil rule for reconsideration, and it claims that "[n]o rule" allows for reconsideration in criminal cases. R.R. 2 & n.2. That is false. L.R. 7-18; R.M. 13. In telling the Court that there was no such rule in this district, the government cited Ninth Circuit cases from three *other* districts with their own rules. *See* R.R. 2. *This* district's criminal rules incorporate its civil rules when "applicable directly or by analogy," L. Cr. R. 57-1, including the rule providing for reconsideration.[11]

---

[11] *E.g.*, *United States v. Rhew*, No. 2:20-cr-222, 2025 WL 2753954, at *1 (C.D. Cal. Sept. 29, 2025); *United States v. Biden*, 745 F. Supp. 3d 1001, 1005 (C.D. Cal. 2024); *United States v. Gonzalez*, No. 2:04-cr-1189, 2023 WL 3045441, at *1–2 (C.D. Cal. Apr. 20, 2023).

**Remedies.**  The government insists that it is right on the merits and does not

engage in an analysis of the proper remedies.  *See* R.R. 9–10.  If Mr. Essayli's service

violates the constitution, the government has not disputed that additional remedies are

necessary.

To that end, the defense notes the recent dismissal without prejudice of the

indictments against James Comey and Letitia James.  *Comey*, 2025 WL 3266932;

*United States v. James*, No. 2:25-cr-122, 2025 WL 3266931 (E.D. Va. Nov. 24, 2025).

In both cases, the district court recently applied the Supreme Court's *Ryder* decision to

unlawful U.S. Attorney appointments.  *E.g.*, *Comey*, 2025 WL 3266932, at *15 (citing

*Ryder v. United States*, 515 U.S. 177, 188 (1995)).  Although *Ryder* concerned

adjudicators, Judge Currie confirmed that the same principle applies to invalidly

appointed prosecutors, *id.* at *12 n.19, as the defense has consistently argued, *see*

Mot. 54–55 (citing *Ryder*); R.M. 15–16 (same).

The Court should also disqualify Mr. Essayli from supervising these

prosecutions.[12]  The Third Circuit recently affirmed that remedy following the statutory

FVRA violation in New Jersey.  *Giraud 3d Cir.*, 2025 WL 3439752, at *12.  The

ongoing constitutional violation in this district warrants at least as strong a dose.

_____

[12] Such an order would not render "most of the Department of Justice"
unconstitutional.  R.R. 5.  The government says that the "defendants do not address"
this argument about the possible consequences of the Court's ruling for Main
Justice attorneys.  *Id.*  But the defendants have already dismantled that argument:
those Department attorneys are not appointed under Title 28, and the Court's
interpretation here will not affect them.  Def. Suppl. 3 n.3.  The government has no
response, and no legal authority for its parade of horribles, so instead it mistakenly
accuses the defense of ignoring the issue.  Regardless, this policy argument is for
Congress, not the Court.  *Giraud 3d Cir.*, 2025 WL 3439752, at *11.

1

Respectfully submitted,

2

CUAUHTEMOC ORTEGA
Federal Public Defender

3

4

Dated: December 5, 2025          By:   */s/ James Anglin Flynn*
                                       JAMES ANGLIN FLYNN

5

DREW HAVENS

AYAH A. SARSOUR

6

Deputy Federal Public Defenders

7

*Attorneys for Defendants*

8

*Ismael Garcia, Jr. &*
*Jaime Hector Ramirez*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24