IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:25-cr-264-SSS |
| Plaintiff, | |
| v. | |
| JAIME HECTOR RAMIREZ, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-655-MEMF |
| Plaintiff, | |
| v. | |
| ISMAEL GARCIA, JR., | |
| Defendant. | |
| UNITED STATES OF AMERICA, | Case No. 2:22-cr-573-FWS |
| Plaintiff, | |
| v. | |
| RONNY ROJAS, | |
| Defendant. | |

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

# I.  <u>INTRODUCTION</u>

This Order resolves a consolidated Motion for Reconsideration brought by Defendants Jaime Hector Ramirez (Case No. 5:25-cr-264-SSS), Ismael Garcia, Jr. (Case No. 2:25-cr-655-MEMF), and Ronny Rojas (Case No. 2:22-cr-563-FWS) (collectively, "Defendants").  *Ramirez*, ECF No. 57; *Garcia*, ECF No. 50; *Rojas*, ECF No. 301 (joinder).  The court previously ruled that Bilal A. Essayli ("Essayli") was unlawfully serving as Acting United States Attorney for the Central District of California, but that he could continue serving in the Central District based on his prior appointment as a Special Attorney and his designation as First Assistant United States Attorney ("FAUSA").  *See United States v. Ramirez*, --- F. Supp. 3d ---, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025) ("October 28 Order").  Defendants' Motion requests the court to reconsider the part of its October 28 Order that permits Essayli's continued service, arguing that it violates the Appointments Clause of the Constitution and that Defendants' indictments must therefore be dismissed.  For the reasons explained in this Order, Defendants' Motion is DENIED.

# II.  <u>BACKGROUND</u>

The court's October 28 Order sets forth the factual background and the court's analysis.  Given that discussion, and because Defendants do not allege any new facts, the court need not set forth a detailed factual background here.

On November 10, 2025, Defendants Ramirez and Garcia filed a Motion for Reconsideration of the October 28 Order. *Ramirez*, ECF No. 57; *Garcia*, ECF No. 50. Defendant Rojas filed a Motion for Joinder on November 12, 2025. *Rojas*, ECF No. 301. The government filed an Opposition on November 26, 2025, *Ramirez*, ECF No. 59; *Garcia*, ECF No. 52; *Rojas*, ECF No. 302, and on December 5, 2025, Defendants Ramirez and Garcia filed a Reply. *Ramirez*, ECF No. 60; *Garcia*, ECF No. 53.[1]

### III.  <u>STANDARD OF REVIEW</u>

"No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). Instead, courts look to the Federal Rules of Civil Procedure for guidance. *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000); *United States v. Bowie*, 2025 WL 2496076, at *1 (D. Or. Aug. 29, 2025); *United States v. Krug*, 2013 WL 12216365, at *2 (C.D. Cal. Feb. 4, 2013).

Rule 59(e) authorizes motions to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or

---

[1] Because the motion and briefs are substantively identical across the cases, this Order's discussion cites only the docket entries in *Ramirez*.

(3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001); *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Rule 60(b) allows a district court to provide relief from a final judgment or order if the moving party can show:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citations and internal quotation marks omitted); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858–59 (9th Cir. 2022).[2]

---

[2] The Local Civil Rules of the Central District of California govern in criminal proceedings when "applicable directly or by analogy." L. Cr. R. 57-1; *see also, e.g.*, *United States v. Biden*, 745 F. Supp. 3d 1001, 1005 (C.D. Cal. 2024) (applying local civil rule governing motions for reconsideration in a criminal case). Local Civil Rule 7-18 requires a party moving for reconsideration to show "(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change in law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

(continued . . . )

## IV.  **DISCUSSION**

The Appointments Clause requires that "Officers of the United States" be nominated by the President "by and with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2.  But the Appointments Clause makes an exception for "inferior" officers, whose appointment Congress "may by Law vest" in the President, in the courts, or in "the Heads of Departments."  *Id.*

To show that Essayli's service violates the Appointments Clause, Defendants must first establish that the nature of his service makes him an officer of the United States, as opposed to a non-officer employee.  *See Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976).  If Defendants show that Essayli is an inferior officer, they must then show that his appointment to office was made without statutory authority.  *See United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The head of a department has no constitutional prerogative of appointment to offices independently of the legislation of [C]ongress . . . .").  Defendants argue that because Essayli continues to supervise prosecutions and serve as a "high-level government manager," he is an inferior officer subject to the Appointments Clause,

---

"Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion."  *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162 (C.D. Cal. 2008) (citing *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

and no statute vests the Attorney General with authority to appoint him to his

current role. *See* ECF No. 57 at PageID#616–621, 623–628.[3]  The court disagrees.

Here, on July 29, 2025, Attorney General Pamela Bondi entered an

"Appointment of Bilal A. Essayli as Special Attorney and Designation as First

Assistant United States Attorney for the Central District of California."  ECF No.

10 at PageID#169.  In part, that appointment states that "[b]y virtue of the

authority vested in the Attorney General by law, including 28 U.S.C. § 509,[4]

510,[5] and 515,[6] I hereby appoint Bilal A. Essayli as a Special Attorney and

designate him as First Assistant United States Attorney for the Central District of

California . . . ."  *Id.*

---

[3]  The court assumes that the nature of Essayli's role makes him an inferior officer subject to the Appointments Clause, not a non-officer employee.  *See In Re Grand Jury Investigation*, 916 F.3d 1047, 1052–53 (D.C. Cir. 2019) (finding that Special Counsel Robert Mueller was an inferior officer under the Appointments Clause).

[4]  Section 509 states, with exceptions not relevant here, that "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General."

[5]  Section 510 states that "[t]he Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

[6]  Section 515(a), in relevant part, states that:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Defendants' argument that Congress has not vested the Attorney General with appointment authority under the Appointments Clause runs headlong into *United States v. Nixon*, 418 U.S. 683, 694 (1974). There, the Supreme Court stated that Congress has vested in the Attorney General "the power to appoint subordinate officers to assist him in the discharge of his duties," citing 28 U.S.C. §§ 509, 510, 515, and 533.[7] *Id.* Although Defendants downplay this language as a "stray remark," ECF No. 60 at PageID#656, other courts have treated this language as binding. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019); *United States v. Concord Mgmt. & Consulting, LLC*, 317 F. Supp. 3d 598, 623 (D.D.C. 2018); *United States v. Stone*, 394 F. Supp. 3d 1, 25 (D.D.C. 2019) ("Like the Special Prosecutor in *Nixon*, Special Counsel Mueller was duly appointed under 28 U.S.C. §§ 509, 510, and 515."); *see also United States v. Manafort*, 321 F. Supp. 3d 640, 657 (E.D. Va. 2018) (holding that Special Counsel

---

[7] Section 533 states that:

> The Attorney General may appoint officials--
> (1) to detect and prosecute crimes against the United States;
> (2) to assist in the protection of the person of the President; and
> (3) to assist in the protection of the person of the Attorney General.
> (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.
>
> This section does not limit the authority of departments and agencies to investigate crimes against the United States when investigative jurisdiction has been assigned by law to such departments and agencies.

Robert Mueller's appointment under §§ 509, 510, 515, and 533 complied with the Appointments Clause).

Like Defendants here, the grand jury witness subject to contempt in *In re Grand Jury Investigation* argued that *Nixon's* language recognizing the Attorney General's appointment authority under §§ 509, 510 and 515 was non-binding dictum.  916 F.3d at 1053.  The D.C. Circuit rejected that argument, concluding that it was not dictum because the language was a "necessary antecedent" to *Nixon's* ultimate holding.  *Id.*[8]  The D.C. District Court rejected a similar argument in *United States v. Concord Management & Consulting LLC*, concluding that the *Nixon* language was a "necessary step[] toward" the "ultimate conclusion[]" in that case and was therefore "authoritative."  317 F. Supp. 3d at 623.[9]

But even if the *Nixon* language is dictum, it is certainly not a "stray remark"—instead it would be entitled to "appropriate deference" by the court. *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000).  As the Ninth Circuit has "frequently acknowledged, Supreme Court dicta have a

---

[8]  The Ninth Circuit uses a similar test:  "A statement is dictum when it is made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and is therefore not precedential."  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*, 785 F. Supp. 3d 629, 633–34 (C.D. Cal. 2025).

[9]  The D.C. Circuit also recognized the Attorney General's appointment authority in *In re Sealed Case*, 829 F.2d 50, 55–56 (D.C. Cir. 1987), albeit without relying on *Nixon*.  There, the circuit court had "no difficulty concluding that the Attorney General possessed the statutory authority" to appoint an independent counsel to investigate the Iran/Contra affair.  *See id.* at 55.

weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly, we do not blandly shrug them off because they were not a holding." *Id.* (internal quotation marks omitted). In short, whether viewed as binding or merely persuasive, *Nixon*'s recognition of the Attorney General's appointment authority controls the issue before the court.[10]

## V. <u>CONCLUSION</u>

Congress has vested in the Attorney General "the power to appoint subordinate officers to assist [her] in the discharge of [her] duties," *Nixon*, 418 U.S. at 694, and to delegate her authority to such officers. 28 U.S.C. § 510. The Attorney General exercised those powers by appointing Essayli as a Special Attorney and delegating to him the authority he wields as FAUSA. That valid exercise of statutory authority complies with the Appointments Clause. Accordingly, Defendants' Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

DATED: December 12, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

[10] Defendants argue that the *Nixon* Court's view was "eviscerated" in *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), based on the district court's "painstaking" review of the relevant statutes. ECF No. 60 at PageID#656. But, of course, a district court judge cannot "eviscerate" a Supreme Court holding. Even if this court agreed with *Trump*'s analysis, it is bound to follow the Supreme Court.