TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Deputy Chief, Criminal Appeals Section
Assistant United States Attorney
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2400
E-mail: alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAIME HECTOR RAMIREZ,<br>Defendant. | No. 5:25-cr-264-SSS |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TU ANH TRAN, et al.<br>Defendant. | No. 8:25-cr-250-JVS-1 |

**GOVERNMENT'S MOTION FOR STAY PENDING APPEAL**

The United States of America hereby moves for a stay of this Court's disqualification order (*Ramirez* Dkt. 85; *Tran* Dkt. 73) pending its appeal of that order (*Ramirez* Dkt. 88; *Tran* Dkt. 75), as contemplated by the Court's administrative stay order pursuant to the parties' joint stipulation (*Ramirez* Dkt. 86; *Tran* Dkt. 74).

The government's request for a stay is based on the attached memorandum, the files and records in these cases, and any other evidence that the Court may consider. The government further relies on its previously filed opposition and attached exhibits to defendants' renewed motion to dismiss and disqualify ("Gov't Opp.," *Ramirez* Dkt. 74), its notice of new authority (*Jackson* Notice, Dkt. 66), its supplemental memorandum regarding remedies ("Gov't Supp.," Dkt. 50), and its opposition to defendants' motion for reconsideration (Gov't Reconsider Opp. 5, Dkt. 59).

Dated: Nov. 3, 2026

Respectfully submitted,

*/s/ Alexander P. Robbins*

ALEXANDER P. ROBBINS
Assistant United States Attorney
Attorney for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION .......... 1

II. THE COURT'S DISQUALIFICATION ORDER SHOULD BE STAYED .......... 3

A. This Court Has Discretion to Stay Its Own Order Pending Appeal .......... 3

B. This Court's Decision Should Not Take Effect *Before* the Decision It Relied On .......... 6

C. A Stay Is Warranted Because This Court Went Significantly Beyond *Jackson*, Which Itself May Be Overturned or Modified .......... 11

D. A Stay Is Warranted Because This Court's Delegation Analysis Is Misguided and Its "Functional" Test Is Standardless and Unworkable .......... 14

III. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Arizona Alliance for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026) .......... 10

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (2022) .......... 12

*Bullock v. BLM*, 489 F. Supp. 3d 1112 (D. Mont. 2020) .......... 17

*Camreta v. Greene*, 563 U.S. 692 (2011) .......... 9

*Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. 2025) .......... 9

*East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) .......... 10

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .......... 8

*Himebaugh v. Smith*, 476 F. Supp. 502 (C.D. Cal. 1978) .......... 4

*In re Grand Jury Subpoenas to Office of New York State Att'y Gen.*, 188 F.4th 595 (2d Cir. 2026) .......... 12, 17, 18

*In re Zermeno-Gomez*, 868 F.3d 1048 (9th Cir. 2017) .......... 6

*Jacobellis v. Ohio*, 378 U.S. 184 (1964) .......... 20

*Labrador v. Poe*, 144 S. Ct. 921 (2024) .......... 3, 5

*Landis v. North American Co.*, 299 U.S. 248 (1936) .......... 3, 5, 11

*Lawrence v. Chater*, 516 U.S. 163 (1996) .......... 3

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ........................................ passim

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........................................ 5, 11

*Nat'l TPS Alliance v. Noem*,
163 F.4th 1152 (9th Cir. 2025) ........................................ 6

*Newsom v. Trump*,
141 F.4th 1032 (9th Cir. 2025) ........................................ 4

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ........................................ 9

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................ 3, 4, 5, 8

*Noem v. Doe*,
145 S. Ct. 1524 (2025) ........................................ 10

*Scripps-Howard Radio, Inc. v. FCC*,
316 U.S. 4 (1942) ........................................ 3

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ........................................ 5, 7

*Trump v. United States*,
603 U.S. 593 (2024) ........................................ 9

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va. 2025) ........................................ 8

*United States v. Fiorillo*,
186 F.3d 1136 (9th Cir. 1999) ........................................ 15

*United States v. Garcia*,
No. 2:25-CR-227, 2025 WL 2985284 (D. Nev. Oct. 23, 2025) ........................................ 6, 9

*United States v. Giordano*,
416 U.S. 505 (1974) ........................................ 15

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. Aug. 17, 2026) ........................................ passim

*United States v. Naviwala*,
2026 WL 1031149 (D.N.J. Apr. 16, 2026) ........................................ 8

*United States v. Ramirez ("Ramirez I")*, 807 F. Supp. 3d 1086 (C.D. Cal. Oct. 28, 2025) ........ 1, 13, 18

*United States v. Ramirez-Martinez*, No. 22-cr-01721, 2026 WL 113431 (D.N.M. Jan. 14, 2026) ........ 20

*United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017) ........ 6

*United States v. Sanchez-Gomez*, 584 U.S. 381 (2018) ........ 7

*United States v. Silva-Rosa*, 275 F.3d 18 (1st Cir. 2001) ........ 9

*United States v. Simpson*, 927 F.2d 1088 (9th Cir. 1991) ........ 9

*United States v. Williams*, 68 F.4th 564 (9th Cir. 2023) ........ 6

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) ........ 4, 5

*Widakuswara v. Lake*, 832 F. Supp. 3d 55 (D.D.C. 2026) ........ 17

*Yong v. INS*, 208 F.3d 1116 (9th Cir. 2000) ........ 10

**Statutes**

5 U.S.C. § 3345(a)(1) ........ 12

5 U.S.C. § 3347 ........ 12, 13

18 U.S.C. § 245(a)(1) ........ 15

18 U.S.C. § 3731 ........ 14, 15

18 U.S.C. § 5032 ........ 14, 15

26 U.S.C. § 6103(i) ........ 14, 15

28 U.S.C. § 509 ........ 18

28 U.S.C. 510 .......... 15, 18

28 U.S.C. § 515(a) .......... 18, 20

28 U.S.C. § 542 .......... 20

28 U.S.C. § 546(d) .......... 7

28 U.S.C. § 1651 .......... 3, 4

**Rules and Regulations**

Fed. R. App. P. 8(a)(1) .......... 4

28 C.F.R. § 0.20 .......... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 27, 2026—almost exactly one year after rejecting defendants' first attempts to disqualify First Assistant United States Attorney Bilal A. Essayli from "participating in or supervising" litigation in the Central District of California, *see United States v. Ramirez ("Ramirez I")*, 807 F. Supp. 3d 1086 (C.D. Cal. Oct. 28, 2025), *reconsideration denied*, 812 F. Supp. 3d 1011 (Dec. 12, 2025)—this Court reversed course and accepted defendants' proposed disqualification order. (Order at 2–3.) The Court administratively stayed its order so that the government could have the opportunity to seek a stay pending appeal.[1]

This Court should grant a stay pending appeal.

As the Court observed, the "legal landscape changed" in August 2026 when the Ninth Circuit issued *United States v. Jackson*, 187 F.4th 1198 (9th Cir. Aug. 17, 2026), *cert. pending*, No. 26-304. That landscape has not yet settled. The government has filed a petition for a writ of certiorari so that *Jackson* may be reviewed by the Supreme Court, and the response was filed on November 2; the case should be set for conference in early December. If certiorari is granted, the Supreme Court will review the Ninth Circuit's analysis and issue a decision by the end of the term, in or around June 2027. Notably, the Ninth Circuit itself stayed its mandate in *Jackson* pending resolution of the government's cert. petition, thus ensuring that the disqualification order in *Jackson* would not take effect until the Supreme Court has had the opportunity to review the Ninth Circuit's decision. As a matter of both law and equity, this Court should do the

---

[1] The Court also ordered an automatic one-week continuation of the administrative stay in the event that a stay pending appeal is denied (Dkt. 86, No. 3), consistent with the time requirements in Ninth Circuit Rule 27-2.

same: follow the Ninth Circuit's stay decision no less than its merits decision, and not grant the defendants here earlier relief than the *Jackson* defendants will receive. That alone is a sufficient basis to grant the stay.

Moreover, this Court overread *Jackson* by extending it to the September 2026 revised delegation of authority from the Attorney General, which is materially different from the one in *Jackson*. In *Jackson*, the delegation order contained no express limitations whatsoever, and thus the Ninth Circuit concluded that it could be read *only* as "an attempt to assign" the First Assistant "*all* the functions and duties of the U.S. Attorney." *Jackson*, 187 F.4th at 1215 (emphasis added). That is where *Jackson* drew its binding, precedential line—at "all." It expressly declined to "decide what kinds of more limited delegations might be permissible." *Id.* at 1215. Here, by contrast, the delegation order carves out any non-delegable functions of the U.S. Attorney and three specific functions of a U.S. Attorney (which, properly construed, are delegable). For each of those reasons, First Assistant Essayli, unlike the official in *Jackson*, cannot be described as a "*de facto* Acting U.S. Attorney, *id.* at 1215, because he is not. There are at least three functions he cannot perform that an Acting U.S. Attorney could, and indeed there are *no* powers he possesses that are particular to the office of U.S. Attorney.

In extending *Jackson* past its holding—which was "*only* that that the Attorney General's authority to delegate does not permit him to vest *all* of the functions and duties of a vacant office in a single person," *id.* at 1216 (emphases added)—this Court adopted a "functionally occupies" standard from the Second Circuit and applied it for the first time. Such a standard is unworkable and raises more questions than answers. Applying that standard immediately, in this case, would throw into doubt the leadership of the U.S.

Attorney's Office for the Central District unnecessarily, before the Supreme Court has the opportunity to review (or even decline to review) the reasoning of either *Jackson* or the Second Circuit.

This Court has presided over these cases and related litigation for well over a year now, and the legal landscape should settle in a matter of months. A stay is warranted.

## II. THE COURT'S DISQUALIFICATION ORDER SHOULD BE STAYED

### A. This Court Has Discretion to Stay Its Own Order Pending Appeal

"[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 421 (2009); *see also Jackson*, 187 F.4th at 1203 (noting appellate "jurisdiction to review the disqualification order"). Courts have the power to issue stays both under to the All Writs Act, 28 U.S.C. § 1651, *see Lawrence v. Chater*, 516 U.S. 163, 168 (1996), and by virtue of their inherent authority, *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936). As the Supreme Court has explained, the authority of a court to stay its own (or a lower court's) order is "firmly imbedded in our judicial system, consonant with the historic procedures of federal appellate courts, and a power as old as the judicial system of the nation." *Nken*, 556 U.S. at 427 (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 13, 17 (1942)); *Labrador v. Poe*, 144 S. Ct. 921, 922 (2024) (Gorsuch, J., concurring in grant of a stay) ("judges at all levels of the federal judiciary resolve motions for interlocutory relief in brief orders like the one the Court issues today and the Ninth Circuit did below").

A request for a stay pending appeal is evaluated under the "traditional stay factors." *Nken*, 556 U.S. at 426. A court—whether this Court or a reviewing court—

must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.*; *see also Newsom v. Trump*, 141 F.4th 1032, 1043–44 (9th Cir. 2025) (quoting *Nken* and noting that a court of appeals has its own authority to grant stays under the All Writs Act, 28 U.S.C. § 1651); *see also* Fed. R. App. P. 8(a)(1).

The "authority to grant stays has historically been justified by the perceived need to prevent irreparable injury to the parties or to the public pending review," *Nken*, 556 U.S. at 432, so the "first two factors . . . are the most critical," *id.* at 434. They require more than "simply showing some 'possibility of irreparable injury'" or a "'better than negligible'" "chance of success on the merits." *Id.* at 434. But neither must stay applicants establish a *certainty* of harm, or "demonstrate that it is *more likely than not* that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (emphasis added). The inquiry is not whether the party seeking the stay *will* win, but, "in essence, whether the stay petitioner has made a strong argument on which he *could* win." *Id.* at 968 (emphasis added); *see also id.* at 967 (alternatively using the formulations "reasonably likely," "fair prospect," "fair probability"). A court staying its own order need not issue "a prediction that it has rendered an erroneous decision," *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *see also Himebaugh v. Smith*, 476 F. Supp. 502, 510 (C.D. Cal. 1978) ("district court [does not] have to conclude that it was probably incorrect in its determination of the merits"); *cf. United States v. Handy*, 761 F.2d 1279, 1281 (9th

Cir. 1985) (noting, in the bail context, that a district court is not require "to certify that it believes its ruling to be erroneous"). Rather, courts "may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Washington Metro.*, 559 F.2d at 844–45.[2]

Accordingly, a decision to grant or deny a stay pending appeal is not—and is not supposed to be—conclusive as to the merits of the legal question presented. The "purpose of a stay" is simply to allow the courts "the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez*, 640 F.3d at 967 (quoting *Nken*). To the extent such preliminary decisions are precedential, it is because stay decisions are relevant to other stay decisions: although stay "orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Thus the Supreme Court's stay of an order reinstating a member of the National Labor Relations Board should have led the lower courts to likewise stay an order reinstating a member of the Consumer Products Safety

---

[2] In their Reply (Dkt. 75 at 5–6), defendants contend that there is a "much stricter" standard for a *Landis* stay than a stay pending appeal under *Nken*. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (explaining that a "*Landis* stay" involves staying a decision pending some *other*, factually related case). That is wrong: the standard is the same, just applied to different circumstances. Defendants cite no authority for their "much stricter" characterization, and a stay of any stripe is part of a judge's "toolkit," *Poe*, 144 S. Ct. at 922 (Gorsuch, J., concurring)—a "traditional" and "historic" application of an inherent "power as old as the judicial system of the nation." *Nken*, 556 U.S. at 426–27; *see also Landis*, 299 U.S. at 254 ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Indeed, the holding of *Landis* was that lower courts *have* such a stay power, rejecting "a stricter rule" that "there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id.* at 256. In any event, as discussed below, a *Landis* stay in this case would almost certainly be *shorter* than a stay pending appeal.

Commission. *See Nat'l TPS Alliance v. Noem*, 163 F.4th 1152, 1158 (9th Cir. 2025). Stay decisions, in other words, should be consistent when they present "substantially similar facts and turn[] on the same equities." *Id.*

### B. This Court's Decision Should Not Take Effect *Before* the Decision It Relied On

The *Boyle* principle is dispositive here. The disqualification order in the "identical" factual situation in the District of Nevada (Order at 7–8 & n.7) was stayed by that court pending appeal, *see United States v. Garcia*, No. 2:25-CR-227, 2025 WL 2985284, *1 (D. Nev. Oct. 23, 2025) (finding the legal question to be "sufficiently serious" given the potential "harm to the separation of powers," quoting *United States v. Williams*, 68 F.4th 564, 570 (9th Cir. 2023)), and the Ninth Circuit continued that stay when it stayed the issuance of its mandate pending the government's petition for certiorari, *see Jackson*, 9th Cir. No. 25-6214, Dkt. 63; *see also id.* Dkt. 62 (stay motion).

That means the disqualification order in *Jackson*—the basis for this Court's "reviewing its own decision anew based on intervening binding precedent" (Order at 15 n.13)—has not yet taken effect in that case. The "parties' obligations" under the court's order have not yet "become fixed." *In re Zermeno-Gomez*, 868 F.3d 1048, 1052–53 (9th Cir. 2017) (quoting Fed. R. App. P. 41(c), advisory comm. note).[3] As a matter of law,

[3] *Zermeno-Gomez* addressed a "distinct issue," which was when a precedent of the court of appeals becomes binding *on other judges* (as opposed to parties) when applying the law of the circuit in their decisions—i.e., when "a published decision that has not been modified or withdrawn is binding on lower courts within the circuit." *Id.* Thus the district judges of the Ninth Circuit were required to apply as precedent the en banc decision in *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017), until it was vacated by the Supreme Court, *see* 584 U.S. 381 (2018). The Ninth Circuit's resolution of the government's motion to stay the judgment and the mandate in *Jackson* reflects this distinction: the court of appeals declined to stay its judgment, meaning its decision had

*(footnote cont'd on next page)*

the Ninth Circuit's determination that the disqualification order there should not take effect until Supreme Court review has concluded should be controlling here. *Boyle*, 145 S. Ct. at 2654. And as a matter of equity, it would be unfair for the defendants in these cases to get earlier relief than the *Jackson* defendants themselves. Although there have been other disqualification orders issued in Nevada (because there, unlike here, the district judges are not recused, *see* Order at 16), none (as far as government counsel are aware) has been the subject of stay litigation in the Ninth Circuit.[4]

In the Western District of Washington, although the legal context is different,[5] the Ninth Circuit also granted a stay. There, the district court ordered reinstatement of a fired court-appointed U.S. Attorney and refused to stay its order. *See Rogoff v. Trump*, No. 26-cv-2566 (W.D. Wash.), Dkt. 44, 48. The government appealed and filed an emergency stay motion; the Ninth Circuit granted the government's motion for an administrative stay, after which the plaintiffs consented to a full stay pending appeal, *see* 9th Cir. No. 26-6445, Dkt. 9–13.

Those are the two relevant stay decisions government counsel are aware of in this Circuit. (*See also* Gov't Opp. 4–6 (citing these and other cases around the country).) Nowhere in the Ninth Circuit has an Attorney General–appointed FAUSA been

---

precedential effect (and this Court correctly treated it as precedential), even as it granted a stay of the mandate, meaning the case did not return to the district court and the stay pending appeal remains in effect.

[4] The government's stay motion in the case defendants cited in their Reply (Dkt. 75 at 4) was recently denied as moot by the district court, *see United States v. Recinos-Valdez*, D. Nev. No. 3:25-cr-10, Dkt. 153 (Oct. 23, 2026), and the government has since moved to dismiss its appeal, *see* 9th Cir. No. 26-6510, Dkt. 6 (Oct. 30, 2026).

[5] The case was brought as a civil suit, and the issue is whether the President can remove a court-appointed U.S. Attorney under 28 U.S.C. § 546(d) pursuant to his authority under § 541(c) and the Constitution.

generally disqualified in a non-stayed decision or judicially ejected from office.[6] Nationally, only the District of New Jersey (Alina Habba) and the Eastern District of Virginia (Lindsey Halligan) have gone that route, and in very different circumstances. *See United States v. Naviwala*, 2026 WL 1031149, *3 (D.N.J. Apr. 16, 2026); *United States v. Comey*, 810 F. Supp. 3d 768, 782–83 (E.D. Va. 2025); *see also United States v. Jefferson*, No. 3:25-cr-160 (E.D.V.A.), Dkt. 16.[7]

This pattern makes sense. Returning to the stay factors, *see Nken*, 556 U.S. at 434, the first two and "most critical" are likelihood of success and irreparable injury. The government has raised far more than a "substantial case on the merits" here, *Leiva-Perez*, 640 F.3d at 967 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)), especially given that it can prevail on any one of the three legal issues on appeal (the two questions presented in the *Jackson* petition for certiorari as well as the extension of *Jackson* to the revised delegation order), *see* Parts II.C–D, *infra*. And the potential harm, as the District of Nevada recognized, is severe:

> The potential harm arises from the Constitution's division of federal powers and the deference and respect each of the three federal branches should afford each other. The concern, as the Ninth Circuit has noted, is "harm to the separation of powers." Such harm is particularly relevant in this case because "the doctrine of separation of powers requires judicial respect for the independence of the prosecutor." The separation of powers calls for courts to show "special solicitude" for Executive Branch prerogatives.

---

[6] In the Northern District of New York, as this Court noted (Order at 15), the Second Circuit stayed its mandate pending certiorari, but declined to stay the district court's order (which had not been previously stayed pending appeal, as had the disqualification order in *Jackson*).

[7] Indeed, the Eastern District of Virginia is currently being led by a FAUSA, apparently without any further disqualification litigation. *See* https://www.justice.gov/usao-edva (visited Oct. 31, 2026).

*Garcia*, 2025 WL 2985284, at *1 (quoting, respectively, *Williams*, 68 F.4th at 570, *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991), and *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982)). The Supreme Court has acknowledged the importance of reviewing "rulings that have a significant future effect on the conduct of public officials . . . and the policies of the government units to which they belong." *Camreta v. Greene*, 563 U.S. 692, 704 (2011). And in a criminal context especially, court decisions "dictat[ing] to the executive branch whom it can appoint to serve as its prosecutors" trigger "weighty separation of powers concerns," *United States v. Silva-Rosa*, 275 F.3d 18, 22 (1st Cir. 2001), because "prosecutorial decisionmaking is the special province of the Executive Branch," *Trump v. United States*, 603 U.S. 593, 620 (2024) (cleaned up). As the Ninth Circuit put it: "we do not dictate to the Executive branch who will serve as its prosecutors." *Williams*, 68 F.4th at 571.

In short, the government's arguments here are strong, *Leiva-Perez*, 640 F.3d at 968, and disrupting federal law enforcement is a serious and irreparable injury. *See Williams*, 68 F.4th at 570 (recognizing that "the effect of any attorney disqualification order is fairly irreversible"); *cf. Dellinger v. Bessent*, 2025 WL 887518, *3 (D.C. Cir. 2025) (finding irreparable harm sufficient to support stay pending appeal where district court directed President "to recognize and work with an agency head whom he has already removed") (internal quotation marks omitted). Nor do the remaining two factors weigh against a stay: there is no harm to Ramirez or Tran from Essayli's supervision of their gun and shoe-theft prosecutions, to the extent he does so (Gov't Opp. 19), and the

"public interest" favors the government.[8] Contrary to the implication in defendants' reply brief, the issue here is disqualification, not dismissal—no "liberty is at stake." (Dkt. 75 at 6). Defendants' reliance on *Yong v. INS*, 208 F.3d 1116 (9th Cir. 2000), is therefore inapposite, because "habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy." *Id.* at 1120. Habeas petitioners are necessarily in custody. Here, by contrast, defendants suffer no prejudice from the mere fact that Essayli has supervisory authority over their prosecutors. (*Cf.* Order at 30–31 (no showing of "substantial prejudice" in the context of the standard for dismissal).)

The timing is also significant. The response to the government's petition for certiorari has already been filed, *see* S. Ct. No. No. 26-304 (Nov. 2, 2026), and the case will be set for conference—likely in mid-December or early-January—and (if certiorari is granted) argued and decided this term.[9] The response to the government's cert. petition in the Second Circuit case has also been filed, requesting consolidated treatment

---

[8] Defendants' Reply accused the government of "misrepresent[ing] the law on the third and fourth factors by strategically misquoting *Nken*" to say that "the third and fourth factors 'merge when the Government is' *one of the parties*." (Dkt. 75 at 7–8 (emphasis added).) That accusation is unfair: judicial decisions have done the same. *See, e.g.*, *Noem v. Doe*, 145 S. Ct. 1524, 1526 (2025) (Jackson, J., dissenting) ("Where, as here, the Government is a party, the balance-of-the-equities and public-interest factors merge."); *see also East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) ("When the government is a party, the last two factors (equities and public interest) merge."), *overruled by Arizona Alliance for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026). But putting aside any merging with the third factor, it is clearly implied by *Nken* that the government represents the "public interest"—not a party's (or a newspaper's, *see* Reply at 8 n.6) policy preferences—and that, accordingly, the fourth factor favors the government.

[9] *See* Stephen Wermiel, "Closing out the cases to be heard this term," SCOTUSBlog (Jan. 23, 2026), https://www.scotusblog.com/2026/01/closing-out-the-cases-to-be-heard-this-term/ (noting that "January is typically the cut-off for scheduling a case for argument in the same term").

with *Jackson* if certiorari is granted. *See* Brief in Opposition, S. Ct. No. 26-348, at 28 (Nov. 2, 2026). In sum, we will all know soon whether the Supreme Court will address the issues raised in this litigation, and (if so) should have rulings in a matter of months. *Cf. Landis*, 299 U.S. at 255 ("discretion [may be] abused by a stay of indefinite duration in the absence of a pressing need"); *Mirant Corp.*, 398 F.3d at 1111 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

In fact, it appears that *Jackson* will be decided sooner than the appeal here, either at the cert. stage (if review is denied) or on the merits one way or the other. There is clearly jurisdiction for this appeal, *see Jackson*, 187 F.4th at 1203, and the average duration of a criminal appeal is well past June 2027. It would also seem unlikely (although of course it is their prerogative) that the Ninth Circuit would choose to decide this appeal *before* resolution of *Jackson*. Accordingly, although the government seeks a full stay pending appeal, this Court has discretion to grant a stay pending appeal without prejudice to modification following the Supreme Court's disposition of the petition in *Jackson*, which should be known in a little over a month. Or this Court could simply hold the government's stay motion in abeyance—leaving the administrative stay in place—and decide it after certiorari is either granted or denied in *Jackson*. In all events, however, this Court's disqualification order should not go into immediate effect while *Jackson* remains pending.

### C. A Stay Is Warranted Because This Court Went Significantly Beyond *Jackson*, Which Itself May Be Overturned or Modified

As noted above, on the first stay factor, the government has "strong argument[s]" on the merits on which it "could win." *Leiva-Perez*, 640 F.3d at 968; *see also id.* at 967

("reasonably likely," "fair prospect," "fair probability"). Indeed, there are at least three separate substantial questions here, any one of which is sufficient for a stay.

*First*, there is at least a fair prospect that the Supreme Court will reverse *Jackson*'s primary FVRA holding. As laid out in the government's petition to the Supreme Court (Cert. Pet. 2, S. Ct. No. No. 26-304), the universally accepted interpretation of 5 U.S.C. § 3345(a)(1) for more than a quarter century was that any properly designated First Assistant could become the Acting PAS official, *see Designation of an Acting Associate Attorney General*, 25 Op. O.L.C. 177, 180 (2001), and on the strength of that interpretation the past *five* Acting Solicitors General spoke for the United States before the Supreme Court and supervised all appellate litigation in every U.S. Attorney's Office around the country, *see* 28 C.F.R. § 0.20. Nor was this view confined to the executive branch: the Government Accountability Office, an arm of Congress charged with enforcing the FVRA, agreed with that reading as well. Cert. Pet. 17. Judge Park laid out this history in his dissent in the Second Circuit case, *see In re Grand Jury Subpoenas to Office of New York State Att'y Gen.*, 188 F.4th 595, 618–19 (2d Cir. 2026) (noting "examples from the Department of Justice in the Bush, Obama, Trump, and Biden administrations"), and at the very least that practice supports a "strong argument on which" the government "could win" this issue in the Supreme Court. *Leiva-Perez*, 640 F.3d at 968 (emphasis added).

*Second*, there is likewise a reasonable probability that the Supreme Court will at least revisit or cut back on *Jackson*'s holding that 5 U.S.C. § 3347 bars delegation of all delegable functions, contrary to the Federal Circuit's holding in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (2022). This is the second question being presented to the

Supreme Court. *See* Cert. Pet. 5. *Jackson* understood it was creating a circuit split, *see* 187 F.4th at 1215, disagreeing with *Arthrex* on the ground (echoed by this Court, *see Ramirez I,* 807 F. Supp. 3d at 1104–07 & 1114 n.29) that the scope of "functions and duties" in § 3347 is far broader than in § 3348. And again, *Jackson*'s resolution of the delegation question was contrary not just to settled executive branch practice but to the views of Congress's FVRA enforcement arm. Cert. Pet. 27–28.

*Third*, although this Court relied on *Jackson* for its disqualification ruling, this Court's decision went significantly further than *Jackson*. This Court *extended Jackson* to a novel factual context, adopting an untenable and unworkable "functional" standard from other circuits. *Jackson* was the reason for this renewed litigation in the first place: this Court's disqualification order stated that it was "reviewing its own [previous] decision anew based on intervening *binding* precedent." (Order at 15 n.13 (emphasis added).) But *Jackson* involved a delegation that contained no limitations whatsoever. *See* 187 F.4th 1214 ("The Attorney General's delegation to Chattah is unlimited."). The delegation in *Jackson* (like the initial delegation in this case) did not even expressly exclude non-delegable functions, and it certainly did not exclude any delegable functions. (Order at 7–8 & n.7.) For that reason, the Ninth Circuit concluded that there was "no way to understand the delegation here as anything other than an attempt to assign Chattah *all* the functions and duties of the U.S. Attorney." *Jackson*, 187 F.4th at 1215 (emphasis added). *Jackson* repeated this "all" standard numerous times,[10] and it is

---

[10] *See id.* at 1215–16 ("*all* the functions and powers of that office"; "*all* the functions of an office"; "exercising *all* the functions and powers of that office"; "unqualified delegation of *all* of the U.S. Attorney's functions and duties to a single person"; "we hold only that [] the Attorney General's authority to delegate does not permit him to vest *all* of the functions and duties of a vacant office to a single person"

*(footnote cont'd on next page)*

also how the respondents in the Supreme Court understand it.[11] Here, by contrast, the Attorney General's revised delegation order to Essayli is limited in at least two significant ways. It expressly excludes any non-delegable functions, and it also excludes three specific functions that the government contends *are* delegable, but which in all events are functions of a U.S. Attorney. (Order at 18–19.) Although this Court erroneously concluded those distinctions were immaterial, they are at least distinctions—meaning the question here is whether to *extend Jackson* to a novel factual context. And this Court's reasoning was misguided, as discussed below, raising a host of thorny questions with no good answers. At the very least, there is a fair probability that the Ninth Circuit (or the Supreme Court in any decision in *Jackson*) will see things differently than this Court did in its analysis of what makes a "de facto" Acting U.S. Attorney.

### D. A Stay Is Warranted Because This Court's Delegation Analysis Is Misguided and Its "Functional" Test Is Standardless and Unworkable

This Court held that it was immaterial that the revised delegation order precludes Essayli from exercising U.S. Attorney functions under 18 U.S.C. § 3731, 26 U.S.C. § 6103(i), and 18 U.S.C. § 5032, because those statutes purportedly involve non-delegable powers. (Order at 22–26.) But that premise is wrong, and the conclusion does not follow.

---

(emphases added)). On the other side of the line, *Jackson* approved designating individuals "to perform certain functions and duties of a vacation office"—wording reflected in the revised delegation—and suggested that even delegating "a large share" of a U.S. Attorney's powers would be permissible. *Id.* at 1215.

[11] *See* Brief in Opposition, S. Ct. No. No. 26-304 (Nov. 2, 2026), at 35 ("Vesting a de facto acting officer with all the functions and duties of a vacant office is not an appointment authorized 'by Law' and thus violates the Appointments Clause.").

As to the premise, the general rule under 28 U.S.C. § 510 is that the Attorney General can delegate *any* power vested in any officer or employee of DOJ. To be sure, there are some statutes that *expressly preclude* delegation of some functions of some DOJ officials. *See* 18 U.S.C. § 245(a)(1) (certification of civil-rights prosecutions). And some statutes *impliedly preclude* delegation of other functions, by authorizing delegation to certain specifically enumerated officials—a listing that would be rendered superfluous if the general delegation power in § 510 could be invoked to delegate to additional officials omitted from the enumeration. *See, e.g.*, *United States v. Giordano*, 416 U.S. 505 (1974). But 18 U.S.C. § 3731, 26 U.S.C. § 6103(i), and 18 U.S.C. § 5032 are different because *they are silent on delegation*. They simply identify a list of officials authorized to take action in the first instance, without any delegation at all. Merely listing a set of officials who can perform a certain function without a delegation neither expressly nor impliedly precludes the Attorney General from delegating the function to a different official under § 510—especially given that courts must construe statutes to give effect to all of them where possible. *See United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999).

Notably, the Ninth Circuit in *Jackson* did not hold that the three statutes are non-delegable. While it noted that "[a] few cases have concluded or at least suggested" that they are, it did not adopt that rationale. *Jackson*, 187 F.4th at 1215.[12] To the contrary,

---

[12] Unlike *Jackson*, this Court cited various implementing regulations, as well as the statutes themselves. (*See* Order at 22–26.) But the regulations are issued under the authority of the Attorney General to supervise the Department of Justice, *e.g.* 28 U.S.C. § 510, and so could be modified through a subsequent order under the same authority. *Cf. NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (discussing an agency's choice between rulemaking and case-specific orders).

*Jackson* relied on the government's position that "*all* of the U.S. Attorney's functions and duties are delegable," and used that position as the basis for its conclusion that the delegation there covered "all the functions and powers of that office." 187 F.4th at 1215. Thus, because the Attorney General has now excluded these three delegable functions, *Jackson* is inapposite, because Essayli unquestionably is not exercising "all" of the U.S. Attorney's functions and therefore is not the "de facto" Acting U.S. Attorney under *Jackson*.

Moreover, this Court's conclusion would not follow even accepting its premise. Even if the three statutes were non-delegable, that *still* would not mean that Essayli is the "de facto" Acting U.S. Attorney—precisely because he *cannot* exercise those three functions, even though an Acting U.S. Attorney *could*. If the functions were non-delegable, that would just mean the specific exclusions in the delegation order were unnecessary, because they would have been covered by the general exclusion of any non-delegable functions (and would have been impliedly excluded regardless in order to render the delegation order valid). In other words, the three functions are carved out either way: they are undisputedly things that an Acting U.S. Attorney can do that Essayli cannot.

That renders *Jackson* inapposite. In addition to the fact that the delegation order there did not even include a general exclusion for any non-delegable functions, the more fundamental distinction is that both the government and the Ninth Circuit treated the three statutes as *delegable rather than non-delegable*. *Id.* at 1215. Accordingly, there is not a single word in *Jackson* that addresses whether it is impermissible to delegate to a FAUSA the powers of a U.S. Attorney *except* for these three statutes. *Jackson*'s

standard for an improper *de facto* acting officer is whether someone has been delegated "all" of the powers of a vacant office. And *Jackson* expressly stated that its holding was limited to "all." *See id.* at 1215–16 ("To resolve these cases, we hold only that that the Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person."). The significance of the three statutes is not that they are delegable or non-delegable but that they are *particular to U.S. Attorneys* (or U.S. Attorneys and other senior officials, as distinct from AUSAs). The question is whether duties are *particular* to an office, not whether they are *exclusive* to the office. The Court's discussion of non-delegable powers conflates whether a statute imposes specific limits on who can be *delegated* power—which trumps more general delegation provisions, as in *Giordano*—with whether a statute specifies who can take action *in the first instance* without any delegation at all.

Recognizing that this case is not squarely controlled by *Jackson*, this Court alternatively reasoned that, even though Essayli cannot exercise "all" of the powers of the U.S. Attorney, he is "functionally equivalent," invoking the Second Circuit's standard, *In re Grand Jury Subpoenas*, 188 F.4th at 612–13, and citing *Widakuswara v. Lake*, 832 F. Supp. 3d 55, 66 (D.D.C. 2026), for a "nearly all" standard. (Order at 20–21; *see also* Dkt. 68 at 9 (citing *Widakuswara* for its "95%" rule).)[13] As this Court concluded, "even if it can be read to withhold a few powers that otherwise *could* have

---

[13] This Court also cited *Bullock v. BLM*, 489 F. Supp. 3d 1112 (D. Mont. 2020), but in that case the *de facto* acting officer "*actually exercised* powers reserved to the" vacant office, in violation of the delegation order. *Id.* at 1128 (emphasis added). *Widakuswara* is also factually distinct: there, another individual was validly serving as the acting PAS officer, and the delegations at issue were from the acting officer to the non-PAS second-in-command, whom the court found invalidly replaced the acting officer as the "de facto" agency head. *See* 832 F. Supp. 3d at 60. The "95 percent" figure came from "deposition testimony" in that case. *Id.* at 66.

been delegated, the revised delegation order is still 'so comprehensive that Essayli functionally occupies the vacant PAS office as the *de facto* acting officer.'" (Order at 19 (quoting *In re Grand Jury Subpoenas*, 188 F.4th at 612–13, alteration omitted).) This Court provided no explanation of why three fewer powers than a U.S. Attorney is insufficient, or how many more powers would need to be carved off before a FAUSA ceases to be a "functionally" Acting U.S. Attorney (or, critically, why the most senior AUSA in the office would ever be any different).

Nor did the Second Circuit explain how a "functionally equivalent" standard would apply in practice; the court had no occasion to do so, because the appointment and designation order there was essentially the same as the one in *Jackson*. *See* 188 F.4th at 600.[14] Indeed, no court has attempted an explanation of the "functional" standard—which is unsurprising, because it is unprincipled and unworkable, especially in this context. This Court explained why last year. The Department of Justice is unusual among government agencies in the amount overlap between the duties of presidentially appointed U.S. Attorneys and Attorney General–appointed AUSAs and other DOJ lawyers. *See Ramirez I*, 807 F. Supp. 3d at 1113. The vast majority of the functions and duties of a U.S. Attorney are *also* the functions and duties of an AUSA (or Special

[14] *See also* No. 25-mc-19-LGS (N.D.N.Y.), Dkt. 46 at 405 ("[B]y virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 515, I hereby ratify Mr. Sarcone's appointment as Special Attorney and designation as First Assistant United States Attorney for the Northern District of New York. . . . As First Assistant United States Attorney, Mr. Sarcone has authority to serve as Acting United States Attorney during the vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998.").

Attorney).[15] U.S. Attorneys and AUSAs alike exercise the power of the Attorney General: "[T]he statutes and regulations that establish the structure of the Department of Justice and define the Attorney General's duties and powers . . . permit the delegation of many—if not most—of the Attorney General's duties. They permit the appointment of officers to perform those delegated duties. And they authorize AUSAs to perform duties that are not exclusive to the office of the United States Attorney." *Id.*

That makes a "functional" analysis effectively impossible here. As noted, the logic of such an argument would imply that *no one* other than a U.S. Attorney (or FVRA acting U.S. Attorney) is ever allowed to be the seniormost prosecutor in a U.S. Attorney's Office. (Gov't Opp. 20–21 & n.12.) Neither this Court (nor the Second Circuit) addressed that problem. If Essayli were to leave, and this Court's disqualification order were to go into effect across the board, what then? *Jackson* certainly does not require that no remaining AUSA is allowed to lead the office, but the Second Circuit's (and this Court's) "functional conception of acting officers" would seem to do just that. (Order at 13.)

And what if Essayli remained in the office as an AUSA and Special Attorney but could not supervise or prosecute? The Attorney General had the authority to appoint him to serve in the office in the first place. (*Cf.* Gov't Opp. at 21 ("Defendants' only other objection would be that Essayli is not lawfully working in the office *at all*—even as a line attorney who could prosecute their cases personally—but this Court has already held that he is.").) Could Essayli continue to perform the functions and duties

---

[15] Indeed, 28 U.S.C. § 515(a) specifically defines the office of "special attorney" with reference to the "kind[s] of legal proceeding[s] . . . which United States attorneys are authorized by law to conduct."

customarily performed by the head of the office but nowhere laid out in law or regulation? Could he confer with local heads of other federal agencies? Post on social media or talk to the press (*cf.* Justice Manual 1-7.310)? Formulate office hiring recommendations to EOUSA? Supervise the supervisors in the office as part of the Front Office? Lead meetings? *Jackson* does not come close to passing on any of these questions, nor were they presented to the Second Circuit. Nor does this Court's decision offer any guidance for the government in answering these questions, short of removing Essayli from office completely. A "functional conception of acting officers," given the overlap in statutory functions and duties of AUSAs and U.S. Attorneys, is hopelessly indeterminate. *Cf. Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) ("I know it when I see it"). *Jackson* may have been wrong on the merits, but at least "all" is a coherent standard.

And even if one were to attempt a "functional" analysis: where a PAS and non-PAS office share substantial overlap in functions and duties, but there are functions that only the PAS officer can perform, how can a delegation that includes *only* the overlapping functions and *none* of the PAS-only functions constitute an attempt to install a "de facto" PAS officer? Essayli was not made a "de facto" acting officer by a delegation that gives him none of the powers such an officer would have. Indeed, the revised delegation order here gives Essayli no more power than *any other* Special Attorney or AUSA. The only authority not specifically included in the text of § 515 or § 542 is the power to "supervise" (not just "conduct") litigation in the Central District, similar to the revised delegation found valid in New Mexico. *See United States v. Ramirez-Martinez*, No. 22-cr-01721, 2026 WL 113431, *19 (D.N.M. Jan. 14, 2026).

But many AUSAs supervise litigation, even as first chair in a trial or appeal. Supervising others does not make one a U.S. Attorney. Nor does supervising many, even everyone else in the office—again, *someone* is going to be the seniormost AUSA whenever there is an unfilled vacancy, even if the duties specific to a U.S. Attorney have to be kicked up the chain to D.C. Otherwise no one is allowed to be in charge.

In sum, to the extent there are "functions or duties" that could make someone a "de facto" U.S. Attorney, it would be those functions and duties *specific to the office of U.S. Attorney*—which is exactly the authority Essayli *does not* have. Under the terms of his revised delegation, Essayli has *none* of the functions and duties that define the vacant office. And he has *all* the functions and duties of an AUSA or Special Attorney. A "functional" test that evaluates this situation and concludes that Essayli is more U.S. Attorney than AUSA is untenable. At the very least, it is a significant departure from the precedential requirements of *Jackson*, which was the reason for this Court's change of position from its initial decision in *Ramirez I*. Certainly the legal questions are sufficiently serious to warrant a stay.

## III. CONCLUSION

This Court's order disqualifying Essayli from participating in or supervising the prosecutions of Ramirez and Tran should be stayed pending appeal.