TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Deputy Chief, Criminal Appeals Section
Assistant United States Attorney
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2400
E-mail: alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAIME HECTOR RAMIREZ,<br>Defendant. | No. 5:25-cr-264-SSS |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TU ANH TRAN, et al.<br>Defendant. | No. 8:25-cr-250-JVS-1 |

**<u>GOVERNMENT'S REPLY</u>**
**<u>IN SUPPORT OF MOTION FOR STAY PENDING APPEAL</u>**

As the government explained in its stay motion (*Ramirez* Dkt. 89), the administrative stay of the Court's disqualification order should be continued pending appeal.

//

//

The stay should be without prejudice to any party's right to request vacatur or modification based on sufficiently changed circumstances. A proposed order is attached.

Dated: November 10, 2026

Respectfully submitted,

*/s/ Alexander P. Robbins*

ALEXANDER P. ROBBINS
Assistant United States Attorney
Attorney for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 1
III. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Cmty. Legal Servs. v. U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) ........ 7

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ........ 3

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ........ 3, 8

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 1, 2

*Perry v. Brown*,
639 F.3d 1153 (9th Cir. 2011) ........ 2, 12

*Thakur v. Trump*,
163 F.4th 1198 (9th Cir. 2025) ........ 7

*Thurman-Carr v. Murillo*,
No. 23-55010, 2024 WL 385652 (9th Cir. Feb. 1, 2024) ........ 9

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ........ 2

*SEACC v. U.S. Army Corps of Eng'rs*,
472 F.3d 1097 (9th Cir. 2006) ........ 2, 12

*United States v. Garcia*,
No. 2:25-CR-227, 2025 WL 2985284 (D. Nev. Oct. 23, 2025) ........ 3, 7

*United States v. Giordano*,
416 U.S. 505 (1974) .......... 4

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. 2026) .......... passim

*United States v. Ramirez-Martinez*,
No. 22-cr-01721, 2026 WL 113431 (D.N.M. Jan. 14, 2026) .......... 7

*United States v. Simpson*,
927 F.2d 1088 (9th Cir. 1991) .......... 7

*United States v. Williams*,
68 F.4th 564 (9th Cir. 2023) .......... 1, 7, 8

**STATUTES**

18 U.S.C. § 3731 .......... 3

18 U.S.C. § 5032 .......... 3

26 U.S.C. § 6103(i) .......... 3

28 U.S.C. § 510 .......... 4

28 U.S.C. §§ 515 .......... 3

28 U.S.C. § 542 .......... 3

**RULES**

Fed. R. App. P. 4(b)(1)(B) .......... 9

# I. INTRODUCTION

The Ninth Circuit has stayed its mandate in *Jackson* pending the Supreme Court's disposition of the government's petition for certiorari, so the disqualification order in *Jackson* has yet to take effect. This Court should not jump ahead of *Jackson* and disqualify the First Assistant U.S. Attorney for the Central District of California before *Jackson* becomes final. At a minimum, this motion should be held in abeyance until the Supreme Court acts on the *Jackson* certiorari petition, which should occur in a few weeks.

The government has presented two serious issues and strong arguments to the Supreme Court, and a third to this Court. If the government fails before the Supreme Court on its first two issues, it will take its third issue to the Ninth Circuit, asking the Circuit not to extend *Jackson* to this novel context of an expressly limited delegation order and advocating for the distinction this Court correctly drew in *Ramirez I*.

# II. ARGUMENT

**1.** Defendants' opposition agrees with the government on a number of points worth noting at the outset:

**a.** Defendants no longer dispute that the "traditional" stay factors laid out in *Nken v. Holder* govern this motion. 556 U.S. 418, 421, 426 (2009). (*See* Opp. 1–2, Dkt. 91.) Defendants also no longer advance the (incorrect, *see* Mot. 5 n.2) argument that a *Landis* stay is required or that a "much stricter" burden applies.

**b.** Defendants do not contest (at least for purposes of this stay motion) that there is jurisdiction over the government's appeal under the collateral-order doctrine, which *requires* "fairly irreversible" injury and that the issue "determine[] an important question." *United States v. Williams*, 68 F.4th 564, 570 (9th Cir. 2023).

**c.** Critically, defendants do not contest that this Court's decision in *Ramirez II* *extended Jackson* beyond its narrow holding and facts. They argue it was a correct extension (Opp. 4); the government argues it was an incorrect extension (Stay Mot. 13–21), as noted below. But it was an extension.

**d.** Finally, defendants accept that the disqualification order in *Jackson* itself remains stayed pending appeal and certiorari. They acknowledge the mechanism: the district court stayed its own order, and the Ninth Circuit (by staying the mandate pending certiorari) continued that stay. (Opp. 15–16; *accord* Stay Mot. 6.) Defendants claim that the circumstances were different back when the district court granted the stay (Opp. 15), but of course courts have discretion to modify or vacate stays based on changed circumstances,[1] and the Nevada district court has not done so. In all events, the order in these cases should not go into effect while the order in *Jackson* remains stayed. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

**2.** Defendants' two primary arguments against a stay pending appeal are that the government's arguments are insufficiently strong and that there is no irreparable injury to the government. *See Nken*, 556 U.S. at 434 (two "most critical" factors). Both arguments are wrong.

**a.** This Court has heard the parties at length on the three merits issues, including in the government's stay motion, and the government will repeat itself only briefly. Here there are not one but *three* "strong," "substantial," and "serious" issues on which the government "could win," or might have a "reasonably likely," "fair prospect," or

---

[1] *See Perry v. Brown*, 639 F.3d 1153, 1154 (9th Cir. 2011) (following the preliminary-injunction standard, which requires only that the "facts have changed sufficiently since the court issued its order," *SEACC v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1101 (9th Cir. 2006)).

"fair probability" of winning. (Stay Mot. 5–6, 8 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966–67 (9th Cir. 2011) (per curiam), and *United States v. Garcia*, No. 2:25-CR-227, 2025 WL 2985284, *1 (D. Nev. Oct. 23, 2025)).) They are each of the two questions presented to the Supreme Court in *Jackson*, plus the argument laid out in the remedies section of *Ramirez I*. Issues of national importance (and an admitted circuit split, *see* Opp. 3) pending before the Supreme Court are quintessentially stay-worthy under *Nken*'s first prong. And as for the third issue, while this Court may have determined that *Jackson* overruled *Ramirez I*'s holding that Essayli could continue to prosecute cases and supervise litigation as FAUSA (just not as Acting U.S. Attorney), that is not the question for purposes of this stay motion. The question is whether there is a "substantial case" that this Court was right the first time. *Leiva-Perez*, 640 F.3d at 967 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)). There is.

Defendants' opposition rests either on mischaracterization or misunderstanding. They describe the government's position as the view that a delegation "passes muster" if it withholds just "one stick." (Opp. 4.) But the government's argument here, which defendants' opposition does not meaningfully address, is that a delegee who holds *none of the powers* particular to a PAS office cannot "functionally occupy" that office. The three functions withheld—18 U.S.C. § 3731, 26 U.S.C. § 6103(i), and 18 U.S.C. § 5032—are the carved-out functions that a United States Attorney may perform and that an Assistant United States Attorney (or FAUSA) may not. (Stay Mot. 15–17.) They are powers that distinguish the office. Essayli holds *none* of these powers, as the revised delegation order makes clear. Instead, the only authority he holds is the same authority that any Special Attorney or AUSA may exercise under 28 U.S.C. §§ 515 and 542, plus

an express supervisory role within the office. (Stay Mot. 20.) Put simply, the government's argument is that, by definition, Essayli cannot be a "de facto" Acting US Attorney in violation of the FVRA if he is expressly precluded from doing the things that only an Acting U.S. Attorney can do. And if there's a reasonable chance the government might be right about this, it is entitled to a stay.

Defendants claim the government conceded at the hearing that the three functions are non-delegable under Ninth Circuit law and is "hamstrung" by that concession. (Opp. 4–5.) That overstates it. The government's stay motion explained why the statutes are better read as delegable (Stay Mot. 15–16), but also why it does not matter (Mot. 16–17). On the former point, nothing in the plain text of any of the three provisions expressly or impliedly displaces the Attorney General's delegation power under 28 U.S.C. § 510, in contrast to the statute in *United States v. Giordano*, 416 U.S. 505 (1974), which defendants do not address. The three statutes are "silent on delegation." (Stay Mot. 15.) But even if the functions are non-delegable, the revised delegation order's general exclusion withholds them. Indeed, if the functions are *non-delegable*, then, as the government pointed out (Stay Mot. 15–16), the Ninth Circuit's reasoning no longer applies: *Jackson* used the government's position that *all* the office's powers were delegable to rule *against* the government, as the basis for its conclusion that the delegation there covered "all the functions and powers of that office." 187 F.4th at 1215. In short, if the powers are delegable, that undermines this Court's reasoning; if the powers are non-delegable, that undermines *Jackson*'s reasoning. Either way, Essayli cannot perform the functions that are particular to the office of United States Attorney—which is what distinguishes this from *Jackson,* where the delegee was assigned "all the

functions and duties of the U.S. Attorney," 187 F.4th at 1215—and either way, the government is entitled to a stay.

Defendants contend the government "waived" this "particularity" argument by not raising it in Dkts. 66 and 74 (Opp. 5), but the question here is what arguments the government would have before the Ninth Circuit, so the standard would be forfeiture (not waiver). Defendants' contention is also wrong. As this Court knows, the government has argued throughout this litigation that the carve-outs in the revised delegation order distinguish *Jackson*, because under them Essayli does not hold *all* of the United States Attorney's powers.[2] And in any event, the government's distinction between powers particular to an office and powers that because of some external constraint cannot be delegated is a direct response to this Court's own reasoning raised at the October 2026 hearing, and its novel application of a "functional occupancy" test (Order 19, quoting the Second Circuit) instead of the "all" (or "wholesale") line drawn in *Jackson*.

As the government has argued, the revised delegation order adheres to the line drawn in *Jackson*. *Jackson* held "only" that the Attorney General may not "vest all of the functions and duties of a vacant office in a single person," 187 F.4th 1198, 1215–16 (9th Cir. Aug. 17, 2026); it approved designations to perform "certain functions and duties" of a vacant office; and it indicated that delegating "a large share" of a United States Attorney's powers would be permissible. *Id*. at 1215. Defendants fail to explain how a delegation conferring a "large share" but *none of the office-defining functions* is a

[2] Defendants try to argue that even if there are "a few" (Opp. 4) delegable powers carved out, it shouldn't matter, but that is *not* what *either* the Ninth Circuit *or* this Court held: *Jackson* expressly limited its analysis to full delegation, and this Court expressly treated these functions as non-delegable.

"kind of de facto appointment." (Opp. 4.) Defendants' reliance on *Jackson*'s reference to "boilerplate limitations" (*id.*) fails for the same reason. The revised delegation is not "boilerplate."[3] To the contrary, it draws a clear line between an Acting U.S. Attorney (who can perform these purportedly non-delegable functions) and Essayli (who cannot). There is nothing "boilerplate" about making clear that Essayli is different from an Acting U.S. Attorney who can perform *exclusively U.S. Attorney* functions.[4] Far from boilerplate, the revised delegation is tailor-made to *avoid* purporting to install Essayli as an Acting U.S. Attorney, instead delegating him the same powers held by every other supervisory AUSA. Invalidating that revised delegation was an unwarranted extension of *Jackson*, and a sufficient basis for a stay.

Finally, as noted above, defendants try to distinguish this case from the (stayed) Nevada decision by asserting that the Nevada district court was writing on a "blank slate" when it issued its disqualification order. (Opp. 15.) But they have it backwards. This Court's decision—in *Ramirez II*—is the novel one. Back when *Garcia* was issued, the District of New Jersey had already ruled against the government on the same FVRA questions. Here, by contrast, the slate truly is blank. *No other court* has disqualified a First Assistant who has not been granted "a wholesale delegation" (Opp. 4), and no other

---

[3] *See* "Boilerplate," Black's Law Dictionary (12th ed. 2024) ("Ready-made or all-purpose language that will fit in a variety of documents.").

[4] If, for example, half of a U.S. Attorney's functions were expressly non-delegable and half were expressly delegable, and if the Attorney General delegated *only* the delegable half to Essayli, no one could reasonably say that Essayli was a "de facto" Acting U.S. Attorney. But there's no difference in *principle* between half the functions and three functions—either way, the point remains that if there are some functions that Essayli cannot perform, but that an Acting U.S. Attorney could, then Essayli is not a "de facto" Acting, which was the Ninth Circuit's rationale.

court has attempted to apply a "functional" analysis to anything less than a wholesale delegation.[5] The only other court to have considered such a revised, limited delegation has *upheld* it, following this Court's reasoning in *Ramirez I*. *See United States v. Ramirez-Martinez*, No. 22-cr-01721, 2026 WL 113431, *19 (D.N.M. Jan. 14, 2026).

Whatever the answer on the merits, the issues here are clearly stay-worthy.

**b.** Defendants also claim that there is no irreparable injury under *Nken*'s second factor. They do not even address the Nevada district court's contrary conclusion, block-quoted in the government's motion (Stay Mot. 8), or cite *Williams*, the controlling Ninth Circuit authority that both the Nevada court and the government rely on. *See Garcia*, 2025 WL 2985284, at *1 (also relying on *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)). Separation-of-powers concerns are serious and irreparable. As a general rule, courts "do not dictate to the Executive branch who will serve as its prosecutors." *Williams*, 68 F.4th at 571. That is not at all the same as "recovering disbursed funds," *Cmty. Legal Servs. v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 943 (9th Cir. 2025); *cf. Thakur v. Trump*, 163 F.4th 1198, 1205 (9th Cir. 2025). (*Contra* Opp. 8.)

Defendants' main response is to argue that "[t]here is no separation-of-powers injury if, as the Court has held, Essayli's service violates the FVRA." (Opp. 9.) But of course the whole point of the government's appeal is that there are strong arguments that this Court was wrong, and that, if so, irreparable injury will result. Under defendants' reading, the irreparable-harm factor would always collapse onto the likelihood-of-

---

[5] As noted in the government's stay motion, the Second Circuit articulated a "functional" theory but had no occasion to apply it, since the delegation order in that case was materially identical to the one in Nevada and the original one here. (Stay Mot. 18 n.14.)

success factor. That is not how stays work—as the government explained (Stay Mot. 5), the "purpose of a stay" is simply to allow the courts "the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez*, 640 F.3d at 967 (quoting *Nken*). That is what should happen here.

There is also a contradiction in defendants' arguments on this point. On one hand, defendants deem the government's separation-of-powers injury too "abstract" to be irreparable (Opp. 8–9), because Essayli has no personal involvement or real-world role in supervising or prosecuting Ramirez's gun prosecution or Tran's theft prosecution. But on the other hand, defendants claim the same injury running in the other direction as their "substantial injury" weighing against a stay. (Opp. 13–14.) They minimize the importance of the legal issue in these cases by conflating the broader significance of the Court's ruling with the significance of Essayli's role in their particular cases. The legal issue here potentially affects 5,000 cases in the largest district in the country. (Dkt. 74 at 9–10.) The individual cases are a different story; indeed, this Court already found that defendants suffer no "substantial prejudice" from Essayli's (nominal) supervision. (Order at 30–31.) The government's injury, however—a "fairly irreversible" disqualification order, *Williams*, 68 F.4th at 570—is different in kind. The injury is not that Ramirez and Tran's cases cannot proceed without Essayli; it is that a court has displaced the Executive's choice and reassigned supervision of criminal prosecutions on a theory that no appellate court—and in this context, no other court—has yet to apply.

**3.** Defendants also raise a number of ancillary arguments, which lack merit.

**a.** Defendants complain that the government violated Local Rule 7-3, which generally requires parties to meet and confer on a motion at least seven days before

filing. (Opp. 11.) But defendants' position was not in question; indeed, it was discussed at length at the October 2026 hearing. The government initially requested a stay in its opposition to defendant's renewed motion to dismiss (Dkt. 74 at 21–23), which defendants opposed—at length, and as their primary argument in their reply. (*See* Dkt. 75 at 2–7). The government then withdrew its request at the hearing and agreed to a briefing schedule with defendants. This is not a Rule 7-3 violation at all, much less a material one. *See Thurman-Carr v. Murillo*, No. 23-55010, 2024 WL 385652, at *1 (9th Cir. 2024) (unpub.) ("Requiring parties to meet and confer before filing is simply meant to help parties resolve their dispute without a hearing, which promotes the efficient administration of justice.").

**b.** Defendants also complain that the government "waited a week to file a notice of appeal." (Opp. 12.) The government normally has 30 days to do so, Fed. R. App. P. 4(b)(1)(B), and here filed on the morning it submitted its stay motion. No one is "needlessly delaying" anything.

**c.** Defendants further point out that the government did not submit a proposed order along with its stay motion. (Opp. 11.) That is correct; government counsel apologize for the oversight and have submitted one with this reply.

**d.** Defendants claim that the government "renews its misconstruction of *Nken*, arguing that whenever the government is a party, the third and fourth factors merge." (Opp. 12.) They provide no citation, but presumably refer to the part of the government's stay motion observing that it was "unfair" to accuse the government of "misrepresentation" and "strategically misquoting *Nken*" when a Supreme Court justice and a 2021 Ninth Circuit decision had said the same thing. (Stay Mot. 9–10 & n.8.)

That prompted defendants to double down on their misconduct allegations, this time accusing the government of "cho[osing] not to disclose" "binding Ninth Circuit precedent." (Opp. 13.) But defendants appear to have misread the government's argument, which assessed defendants' (original) accusation as "unfair" but did not claim anything about merger. Instead, the government argued (as it does here) that the third factor does not favor defendants—since there is no material harm from Essayli's supervision of their prosecutions—and that the fourth factor, the "public interest," favors the government. (Stay Mot. 10 n.8.) Defendants' contrary arguments on the fourth factor repeat the same mistakes (assuming the premise and emphasizing the relative unimportance of their particular cases) addressed above.

**4.** Finally, as explained in the government's stay motion, this Court's extension of *Jackson* to the revised delegation order is unworkable—particularly its application of a "functional occupancy" test. Defendants illustrate the point in their inability to address the questions raised by a "functional" approach to the FVRA. They appear to concede that the Attorney General *could* delegate supervisory authority to FAUSAs, but object that he "never has." (Opp. 6.) On the next page, however, defendants appear to claim that any "functional 'head of the office'" will be a "de facto U.S. Attorney" (Opp. 7), apparently endorsing the view that "whenever there is an unfilled vacancy . . . no one is allowed to be in charge." (Stay Mot. 21.) That cannot be right, as the government has argued, but it is the necessary, logical implication of their argument. (*See* Gov't Opp., Dkt. 74, at 21 n.12 (pointing out that the same argument would apply to the next-most-senior AUSA if Essayli were to resign).)

Regardless, there is simply no basis for the proposition that the Attorney General is required to personally delegate supervisory authority to each and every supervisory AUSA in the country. Indeed, defendants stop short of claiming that this is the rule. But *even if it were*—or even if, as defendants appear to suggest, some sort of express written delegation might be required for an AUSA to lead an office during a U.S. Attorney vacancy (*cf.* Opp. 7)—then *that requirement would be satisfied here*. The Attorney General has expressly delegated Essayli authority to "conduct and supervise" litigation in the Central District. (Order at 18 (quoting the revised delegation order).)

The Attorney General has issued Essayli a revised delegation order that makes no mention of the FVRA, expressly delegates him authority to "conduct and supervise" litigation in the Central District, and specifically states that he cannot perform duties particular to U.S. Attorneys (including all non-delegable duties and three specific statutory duties). Even if something less than a full delegation of all powers could create a "de facto" Acting U.S. Attorney, and even if that standard were workable (though as the government has laid out, it is not), this would be the last case that warrants such treatment. As the government argued in its stay motion, under the terms of this revised delegation, "Essayli has *none* of the functions and duties that define the vacant office," and has "*all* the functions and duties of an AUSA or Special Attorney." (Stay Mot. 21.) No reasonable test, "functional" or otherwise, should be able to evaluate this situation and conclude that Essayli is more U.S. Attorney than AUSA. He is not the U.S. Attorney, acting or otherwise, de facto or de jure.

## III. CONCLUSION

The government's motion for a stay pending appeal should be granted. The court's order disqualifying Essayli in the above-captioned cases (*Ramirez* Dkt. 85; *Tran* Dkt. 73) should be stayed pending appeal of this Court's consolidated order, through issuance of the Ninth Circuit's mandate, although without prejudice to any party's right to move to vacate or modify the stay based on sufficiently changed circumstances. *See Perry v. Brown*, 639 F.3d 1153, 1154 (9th Cir. 2011) (following the preliminary-injunction standard, which requires only that the "facts have changed sufficiently since the court issued its order," *SEACC v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1101 (9th Cir. 2006)).